## Mickley's Appeal.

1. If a bequest be made to a person absolute in the first instance, and it is provided that in the event of death or death without issue, another legatee or legatees shall be substituted to the share or legacy there given, it shall be construed to mean death or death without issue before the testator. The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life without clear evidence of such intent.

2. M. bequeathed one-sixth of his estate to his son "J., M., or his heirs," and a like proportion in the same language to two other sons, and the remaining three-sixths in trust for each of his three daughters. He also directed "if either of my sons should die without leaving issue living at the time of his death, the share given to such son shall pass to and be divided among such of my children as may be then living, and to the issue of such as may be dead." *Held*, that each son had an absolute indefeasible interest in the share bequeathed to him.

January 23d 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1880, No. 90.

Appeal by Henry J. Mickley, trustee under the will of Joseph J. Mickley, deceased, from a decree of the court sustaining exceptions to the adjudication of one of the judges of said court upon the final account of the appellant as executor.

Joseph J. Mickley, the testator, died February 15th 1878, after having made his last will, which was duly proved and letters testamentary granted to Henry J. Mickley, the executor therein, on February 23d 1878. The testator left surviving him six children, three sons and three daughters, all of whom are still living. By his will the testator ordered the real estate to be sold and the proceeds to be added to the rest, residue and remainder (after payment of debts, &c.), of his personal property, and to be divided into six equal shares or portions. He then provides as follows: " One equal sixth part thereof I give and bequeath to my son, Henry J Mickley, or his heirs. One other equal sixth part I give and be queath to my son, John J. Mickley, or his heirs. One other equal sixth part I give and bequeath to my son, Joseph P. Mickley, or his heirs. One other equal sixth part I direct shall be held by my said executor in trust for the sole and separate use of my daughter, Josephine C. A., wife of John Johnson, during the time of her natural life: and from and immediately after her death I give

and bequeath the principal of said share to all and every the child or children, and issue of a deceased child or children of her, my said daughter Josephine C. A., share and share alike, such issue, however, if any, to take per stirpes the share of their parent.    In default of such child, children or issue of deceased child or children, I direct the said one-sixth of my estate to be equally divided among such of my children as may survive my said daughter, Josephine C. A., and the issue of such as may have died, such issue taking only the share of their parent."    Then follow similar bequests to each of his two other daughters.

Immediately following the last of the three bequests to his daughters, is the following clause, which gives rise to the present controversy. " Fourth. I direct that if either of my sons should die without leaving issue living at the time of his death, the share given to such son shall pass to and be divided among such of my children as may be then living, and to the issue of such as may be dead, such issue, however, taking only the share of their parent. In the event of the death of either of my said children without issue living at the time of his or her death, I direct that in the distribution of the share of such child as aforesaid, the portion thereof allotted to each of my daughters shall be held in trust in the same manner as directed in the provision hereinbefore made for them."

Henry J. Mickley filed his account as executor, and upon the adjudication of said account, it was claimed on behalf of the sons that they, having survived the testator, took, under his will, indefeasible estates.    The auditing judge held that the sons took each a life interest in one-sixth part of decedent's estate.    To this adjudication John J. Mickley and Joseph P. Mickley, two of decedent's sons, filed exceptions as follows:

1st. Because the learned judge erred in finding that the sons of testator took but a life-estate under his will, and in awarding to them their respective shares for life only.

2d. In not awarding to the same their respective shares in fee.

Argument was made upon these exceptions before the court in banc, and the exceptions were sustained ; and the court decreed that the executor pay the distributive shares of decedent's sons to them in their own right absolutely.    From this decision of the court in banc this appeal was taken.

*Edward Hopkinson*, for appellant.—It can hardly be contended that the words of the will do not constitute a good executory bequest, though the words " or his heirs " be read " and his heirs :" Diehl *v.* King, 6 S. & R. 29.

In order to a clear understanding of the law applicable to this bequest, we must carefully distinguish between the case of a bequest to A., and if he should die, to B., and the case of a bequest to A., and if he should die "without issue," or "without children," or

" without leaving issue living at the time of his death." In the first class of cases, that of a bequest to A., absolutely or indefinitely, and if he should die, to B., the rule of construction applicable, and the reason of such rule, are most clearly set out in the opinion of Sir John Romilly, M. R., in the case of Edwards *v.* Edwards, 15 Beav. 357 (year 1852), as follows: " As the testator speaks of death—the most certain of all things—as a contingency, it can only be made contingent by reference to its taking place before a particular period, and as no period of time is mentioned in the will, it is necessarily presumed that the period of time, to which the testator refers, is the period of possession or enjoyment; that is, his own death, when the legacy to A. will take effect; and the subsequent limitation is introduced to prevent a lapse of the legacy in case A. did not survive the testator. In such cases, therefore, the rule may be considered settled, that the bequest must be read somewhat to this effect, that is to say, a bequest to A., but if A. shall die before the bequest becomes vested in him, then to B., and the consequence is this, if A. survives the testator, he takes an absolute vested interest.

The law applicable to the second class of cases, and in which class the bequest now under consideration falls, is likewise in the same case clearly set out, and a distinction drawn between the two classes of cases. " In the second of the supposed cases, there is a manifest distinction. There the event spoken of on which the legacy is to go over is not a certain, but a contingent event. It is not in the case of the death of A., but in the case of his death without issue, or without leaving a child; and here it would be importing a meaning and adding words to the will, if it were to be construed as a condition to entitle B. to take upon the death of A. without issue, if it was to happen at some particular period. In these cases it has always been held, if at any time, whether before or after the death of the testator, A. died without leaving a child, the gift over takes effect, and the legacy vests in B.; this is best established by the case of Farthing *v.* Allen, reported only in 2 Jarman on Wills 688. All those cases are, of course, liable to be varied by the force of the particular expressions which the testator may have made use of in his will, importing a different intention; but they do not affect the rule—on the contrary, they must be held tacitly to admit the application of it, inasmuch as they are treated as exceptions to an existing rule."

Like rules of construction were adopted in the following cases: Jessup *v.* Smuck, 4 Harris 327; O'Mahoney *v.* Burdett, 7 L. R. Eng. & Ir. App. 395; Ingram *v.* Soutten, Id. 408; Olivant *v.* Wright, L. R., 1 Ch. D. 346.

*John G. Johnson,* for appellees.—The appellant's citations from English authorities can be met with citations of equal weight, to

the contrary, from the same source: Home v. Pillans, 2 My. & Keene 18; Watson v. Walton, 7 DeG., M. & G. 248.

The Pennsylvania cases settle the law in our favor: Caldwell v. Skilton, 1 Harris 152; Johnson v. Morton, 10 Barr 245; Biddle's Estate, 4 Casey 59; Karker's Appeal, 10 P. F. Smith 141. The context of the will favors our contention.

Chief Justice SHARSWOOD delivered the opinion of the court, February 16th 1880.

The able argument of the young gentleman who presented this case on behalf of the appellants—who has a hereditary title to legal ability and acumen—has failed to convince us that the learned court below erred in the construction which they put upon the will of Joseph J. Mickley. He is sustained by some English cases which are not of authority with us, and besides, as the great object in the construction of every will is to arrive at the true intention of the testator and to carry that out, if not contrary to law, decision on the language of wills, are not to be too closely followed. It is very clearly settled, both in England and in this state, that if a bequest be made to a person absolute in the first instance, and it is provided that in the event of death, or death without issue, another legatee or legatees shall be substituted to the share or legacy thus given, it shall be construed to mean death or death without issue before the testator. The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life, or what is practically the same thing, to be subjected to an executory gift over upon the occurrence of the contingency of death or death without issue at any future period within the rule against perpetuities without clear evidence of such an intent: Caldwell v. Skelton, 1 Harris 152; Estate of Mary Biddle, 4 Casey 59; Karker's Appeal, 10 P. F. Smith 141; Fahrney v. Holsinger, 15 P. F. Smith 388; McCullough v. Fenton, Id. 418. In Jessup v. Smuck, 4 Harris 327, the general rule is recognised, though in that case the court, upon the construction of the whole will, thought the intention of the testator was very clear, that he meant death "without marriage," at a period subsequent to his own death. In the will before us it is strongly contended that death without issue living at the death of the first taker evinces the same intention. But it is not easy to draw such an inference from those words alone. Mr. Smith, in his work on executory interests, maintains that where the gift over is not merely dependent upon death, but upon dying unmarried and without issue—the event will be construed to mean not a death generally at some time or other, but a death in the testator's lifetime, if the fund or property itself, and not merely the interest or income, is given absolutely to the person whose death is spoken of: sec. 662. In the English cases a distinction is made between devises of realty.

and bequests of personalty, which has not been recognised in this state. But taking the whole will we think there is a very clear indication of the intention of the testator, that the distribution of his estate to the persons entitled should take place at the period of his own death, and not be postponed to a subsequent time. The share of either of his sons so dying without issue is to be divided among his other children, to his sons if living absolutely, and to his daughters, to be held in trust as provided in his will. Thus, while according to the construction contended for, the original share of the son would be held subject to the executory bequest over, the accrued share would be held absolutely, while the accrued shares of the daughters would be held exactly as the original shares. Such a result was referred to and relied on as evidence that it was not the intention of the testator in Caldwell *v.* Skilton, 1 Harris 185. Says Mr. Justice BELL, " besides that construction would render defeasible the original shares first taken under the will, while those which might accrue by the clause of survivorship would vest absolutely, a consequence certainly never contemplated." Decree affirmed and appeal dismissed at the cost of the appellants.