## Haydon's Estate.

Argued April 21, 1939; reargued June 19, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William S. McLean, 3d,* with him *Evans, Bayard & Frick,* for appellant, No. 232, and for appellee, Nos. 233 and 241.

*Edward Darling,* of *Bedford, Waller, Jones & Darling,* with him *Barnes, Myers & Price,* for appellant, No. 233, and for appellees, Nos. 232 and 241.

*Arthur E. Weil,* with him *Collins & Collins, Ben W. Ingber* and *Albert L. Moise,* for appellant, No. 241.

OPINION BY MR. JUSTICE DREW, May 15, 1939:

These appeals involve the construction of certain portions of the will of James C. Haydon who died May 27, 1915. By his will the testator made bequests of $50,000 to each of his two daughters. The gift to his daughter Mary, which is the subject of the present controversy, reads as follows: "I give to my daughter Mary Haydon the same amount, Fifty thousand dollars to be placed in trust with the Girard Trust Company of Phila., the interest on which to be paid her semi-annually during her life. If she dies without issue the said sum of Fifty thousand dollars will revert to her sister Bertha H. Morris." Immediately preceding this gift there was a like provision bequeathing $50,000 to the other daughter, Bertha, with a gift over to Mary in case Bertha should die without issue. The residuary clause gave the residue to his wife for life and provided that upon her death the executors should divide the residue between the two daughters or their direct heirs in blood relation.

Both the daughters survived the testator, but Bertha died intestate and without issue on March 14, 1925. Upon her death, the trustee filed its account of the first trust provided for in the will, and the Orphans' Court awarded the principal to Mary absolutely in accordance with the gift over to her. Mary then died without issue on October 17, 1937. The trustee thereupon filed its account of the second trust set up by the will and presented its petition for distribution of the balance to such parties as the Court should find entitled thereto. The court below concluded that the fund was distributable under the residuary clause of the will, and entered a decree of distribution awarding one-half the fund to the Estate of Bertha Haydon Morris and one-half to the Estate of Mary Haydon Hansen.

From this decree three appeals were taken. One appeal is by the Estate of Mary Haydon Hansen which claims the entire fund on the ground that Mary's interest was an absolute fee and was not divested on her

death without issue. The Estate of Bertha Haydon Morris likewise claims the entire fund on the ground that Mary's interest was divested upon her dying without issue. Edith Haydon Gregory, a niece of the testator, has also appealed and bases her claim to the entire amount on the ground that the court below correctly ruled that the fund passed by the residuary clause but that under that clause the gift to the residuary legatees was contingent upon their surviving to the time of distribution, and that accordingly, since both Bertha and Mary were dead at the time of distribution, she is entitled to the fund as "a direct heir in blood relation."

There can be no doubt that the interest which Mary took under the will was a fee rather than a mere life estate. The principle is well settled that an absolute estate will not be cut down by subsequent provisions in the will unless the testator has expressed a clear and unambiguous intention to do so: *Buechley's Estate*, 283 Pa. 107; *Cross v. Miller*, 290 Pa. 213; *Byrne's Estate*, 320 Pa. 513. Here the testator by providing, "I give to my daughter Mary Haydon . . . Fifty thousand dollars," used words that constitute an absolute bequest. He then directed that the sum should be held in trust during the daughter's lifetime. The sole purpose of this provision was to place in the hands of a competent trustee the duty of properly administering the fund and thus relieve the daughter of these obligations. It cannot reasonably be said that this shows an intention in the instant case to cut down the gift to a life estate. We have frequently held that the mere fact that the testator places a bequest in trust during the beneficiary's lifetime does not, in the absence of a clear intent to the contrary, reduce the absolute interest to a mere life estate: *Boies' Estate*, 177 Pa. 190; *Kelly v. Pennsylvania R. R. Co.*, 226 Pa. 540; *Gunnell's Estate*, 269 Pa. 343. In *Kling's Estate*, 86 Pa. Superior Ct. 312, the testatrix bequeathed all the remainder of her estate to her son "in trust, he to receive the income

of the same during his lifetime . . ." In holding that this was an absolute gift, the court said (p. 315) : "The mere statement that he shall receive the income during his lifetime is not sufficient to reduce to a life interest, what would otherwise be an absolute bequest . . ." It is thus apparent that on the death of her father Mary received an interest in fee subject only to the condition that if she died without issue her interest should pass to her sister.

Since Mary's interest was a fee, upon her death it must pass either to her estate on the ground that the gift over did not become effective, or to Bertha's estate on the ground that the gift over did operate to divest the fee. Under no circumstances can it therefore be said to have passed under the residuary clause, and hence the claim of Edith Haydon Gregory cannot be sustained.

The question then is: Does the gift over of Mary's share take effect upon Mary's death without issue where Bertha has already died without leaving issue? It must be borne in mind that in deciding this question the expressed intention of the testator is controlling, for, as we have frequently stated, "all mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful": *Reck's Appeal*, 78 Pa. 432, 435; *Eichelberger's Estate*, 135 Pa. 160; *Byrne's Estate*, supra.

Where an absolute estate is devised followed by a gift over in the event of the death of the donee without issue, the rule of construction that is applied in the absence of a contrary intention is that the gift over will be construed as referring to death without issue in the lifetime of the testator: *Mickley's Appeal*, 92 Pa. 514; *Lerch's Estate*, 309 Pa. 23. But where the will indicates that the testator contemplated that the death of the legatee without issue might occur after his own death this rule of construction does not apply. As we said in *Mebus' Estate*, 273 Pa. 505, 516: "The rule

is never applied where the first takers referred to are treated as living at a period subsequent to the death of testator." In the instant case the provisions that the trustee should pay the interest from the two funds to the daughters during their lives indicates conclusively that the testator regarded them as surviving him, for it is obvious that the duty to make the payments could not arise until after the testator's death.

Hence it is apparent that the testator did contemplate that the event of dying without issue might occur after his own death. But it is equally clear that he did not intend that when one daughter had died and her share had passed to the survivor, and the surviving daughter then died without issue, that the second gift over should operate to divest her interest and vest it in the estate of the daughter who had been dead for many years. This is true since an examination of the instant will as a whole leaves no doubt that the testator intended that the words "die without issue" as used in each gift should mean die without issue after his own death but within the lifetime of the other daughter.

The will was written in longhand by a testator who was doubtless unfamiliar with the technical rules of construction relating to gifts over upon a failure of issue. However accurate he may have been in setting up these gifts, there can be no doubt as to the result he wished to achieve. He desired that his daughters should share equally in the fund of $100,000 during their joint lives, and that if one of them should die without leaving any children, her share should pass to the surviving daughter. Since he could not foresee which of the two would die first, he had to provide in each instance that upon the death without issue of the beneficiary of that particular share, her interest should pass to the other. A gift over was thus annexed to each bequest solely because he could not tell which would die first. But it is clear that he did not intend that both gifts over should take effect, since the sole purpose of

the gifts over was to vest the entire estate in the survivor. Once this purpose had been accomplished, he had no desire to further control the disposition of the property. The reason for applying the gifts over then ceased to exist, for he could not have intended the surviving sister's legacy to be defeasible upon her death without issue and have it thereupon vest in the estate of her deceased sister whose bequest had already been taken from her and given to the survivor. Had he contemplated such a result and intended that once the entire $100,000 became vested in the surviving daughter, nevertheless upon her death without issue half of it should be divested and be paid over to the estate of the sister who had been dead many years, he would have given a bequest of $50,000 to each daughter outright with no provision for any gift over. But instead he devised a scheme which evidences an intent to benefit the survivor in case the other dies without issue. Therefore, since only one gift over is to take effect and this for the sole purpose of vesting the entire fund in the survivor, the words "if she dies without issue" must mean die without issue at a time after the testator's death but only so long as the other sister is living.

If there had been but one gift over—as for example if the testator had bequeathed the entire $100,000 to Mary but if Mary died without issue then to Bertha— then it is clear that Mary's dying without issue at any time, regardless of whether Bertha predeceased her, would divest Mary's fee and vest the entire interest in Bertha's estate. Thus in *McGlinn's Estate*, 320 Pa. 389, where the testator created a life estate in A followed by a gift over to B if A died without issue, the gift over upon A's dying without issue took effect even though B predeceased A. Since in such a case there is nothing to indicate that "die without issue" is limited to the lifetime of the donee over, it is immaterial when B dies. In the instant case, however, the existence of the two bequests with similar gifts over indicates, as we have

pointed out, an intention that only one gift over is to take effect and that the gift over of Bertha's share to Mary was to operate only if Mary was alive at Bertha's death and similarly that the gift over of Mary's share cannot operate if Bertha was dead at Mary's death.

When Bertha died without issue the gift over of her share became effective to transfer her interest to her sister since Mary was still alive. But upon Mary's death, Bertha had already died and hence the gift over could not take effect. Only by so construing the will can the intention of the testator to give the fund to the survivor be carried out.

The decree is reversed and the record is remitted to the court below for the purpose of entering a decree of distribution awarding the entire fund to the Estate of Mary Haydon Hansen.

DISSENTING OPINION BY MR. JUSTICE STERN:

In my opinion this case is ruled by *McGlinn's Estate*, 320 Pa. 389, and the $50,000 here in question should revert to the Estate of Bertha H. Morris.