## Schroeder's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

174

178

*Wesley Hurst Caldwell* and *Rowland C. Evans*, for exceptant.

*J. Russell Breitinger*, contra.

BOLGER, J., December 15, 1944. — While the intention of testatrix is poorly expressed in her homemade will and therefore invites contention, yet, upon analysis and study, it becomes readily discernible. The auditing judge, we believe, has discovered such intention, and in a well-considered and thorough adjudication has given his reasons therefor. It would be surplusage to repeat his conclusions, with which we agree. However, to epitomize, the testatrix in the first instance has given an absolute estate to her son and fixed the time for payment of principal as his arrival at the age of 25 years (which he attained November 11, 1924), until which time, however, she has directed the application of the income, first to the payment of the sum of $100 to her husband, then to the cost of maintenance and support of her said son, with any balance of such income to her husband. But such directions as to income

in no wise reduce the absolute estate previously given. It is well settled that an estate absolutely given cannot and will not be cut down except by clear, unequivocal, and indubitable language: Chesnut et al. v. Chesnut et al., 300 Pa. 146; Haydon's Estate, 334 Pa. 403; Ramsey's Estate, 346 Pa. 157.

Exceptants argue that testatrix when she wrote her will knew her son was mentally incompetent, hence he would be incapable of making a disposition of his property by will; and that, therefore, her intention must have been to limit his interest to a life estate. However, this is all in the realm of conjecture; the opposite might just as well be argued, that, knowing his limited state of usefulness, he would need all of the principal at the age of 25 ". . . when he may be put in possession of the entire amount and value of the Estate".

The will was executed by testatrix on June 19, 1909, when the son was 10 years old. He did not go to Byberry until 1920, 11 years later. There is nothing from which it could be inferred that the mother believed her son's mentality was permanently impaired. Indeed, as a mother, "Hope springs eternal in the human breast", and she possibly went to her grave entertaining the hope that some day his reason would be restored.

For this, and the other reasons set forth in the adjudication, we believe the exceptions are without merit, and they are, therefore, dismissed and the adjudication is confirmed absolutely.