## Verner Estate.

Argued October 1, 1947.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Kenneth Buffington,* with him *Hunter, Buffington & Kipp,* for appellant in No. 113.

*William H. Turner,* with him *Ellwood J. Turner, P. K. Motheral* and *Reed, Smith, Shaw & McClay,* for appellant in No. 141.

*Ella Graubart* and *Eugene R. Speer,* with them *Richard B. Tucker, Jr.,* and *Patterson, Crawford, Arensberg & Dunn,* for appellees.

*Alexander Black, Jr.,* Trustee ad litem, appellant in No. 145, in propria persona.

OPINION OF MR. JUSTICE HORACE STERN, January 20, 1948:

Testatrix failed to make provision in her will for a contingency which happened, and, however great the temptation to supply the deficiency in accordance with what she presumably would have provided had the hiatus been called to her attention, a court is without power thus to reform the instrument.

Nancy S. Verner died in 1923. By her will she bequeathed to her brother, Harry W. Verner, the sum of $5.00, and to each of her sisters, Elizabeth V. Swartz and Maria W. Lindsay one-quarter of her residuary estate. The remaining one-half she left to the Fidelity Title and Trust Company of Pittsburgh in trust to pay the income to her sisters for and during their lives and, at the death of the survivor, to the four of her nephews who were the children of her sisters, for and during their lives, in equal shares. The will then proceeded: "Upon the death of any one of my said four nephews, leaving lawful issue surviving, then I direct one-fourth of the principal of said trust fund shall be distributed and paid over to the children and heirs at law of the one so dying and thereupon the trust as to such portion of my estate shall cease and determine."

Testatrix was survived by her brother and her two sisters. Elizabeth V. Swartz died in 1937 survived by a son, Warren W. Swartz, who died later that same year leaving a widow and a son by a former marriage, French Swartz Anderson. Maria W. Lindsay died in 1946; she had three sons, Frank V. Lindsay, J. Arthur Lindsay and Joseph H. Lindsay. Frank V. Lindsay is still living and has children. J. Arthur Lindsay died in 1928 without leaving any children. Joseph H. Lindsay died in 1930 leaving a widow and two sons. Harry W. Verner, the brother of testatrix, died in 1946 survived by two children.

At the audit of the trustee's second and partial account the court distributed a one-fourth share of the trust fund to the widow of Warren W. Swartz and his son French Swartz Anderson to be divided equally between them; another one-fourth share to the widow of Joseph H. Lindsay and his two sons to be divided equally among the three of them; another one-fourth share to the trustee for Frank V. Lindsay for purposes specified in the will; the final one-fourth share, the income from which would have been payable to J. Arthur Lindsay had he survived the two sisters of testatrix, in equal shares to the personal representatives of the estates of Harry W. Verner, Elizabeth V. Swartz and Maria W. Lindsay.

The present appeals from the adjudication challenge the distribution of the last mentioned one-fourth share. An attack is also made by French Swartz Anderson on the award of one-half of his father's share to his stepmother.

It will be observed that while testatrix provided that upon the death of any of the four nephews *leaving issue surviving* one-fourth of the principal of the trust fund should be paid to the children and heirs at law of the one so dying, she did not provide for the disposition of the similar one-fourth of the principal in the case of any of the nephews dying *without* leaving issue. The court held, therefore, that she died intestate as to the

principal of the share of J. Arthur Lindsay, and accordingly awarded that principal to the heirs of testatrix, namely, her two sisters and her brother, or, since they had died before the audit, to the personal representatives of their estates. It is the contention of appellants, Frank V. Lindsay, French Swartz Anderson, and the trustee ad litem who represents contingent remainders in posse, that with respect to the share of any of the nephews who should die without issue surviving there are cross limitations implied in the will in favor of the other nephews and their children and heirs at law.

It seems to us entirely clear that there are no such implied cross remainders in this will and that, whatever conjectures might be indulged in as to the provision testatrix would have made for the contingency of a nephew dying without issue had she not failed to anticipate such an occurrence or had she desired to provide for it, it is not within the purview of the court to insert into the will a substantive disposition of her property which she herself, whether by design or inadvertence, failed to make. While judicial interpretation of a will is aimed to ascertain the intention of the testator and may therefore, in some instances, lead to the conclusion that a bequest, though not formally expressed in the will, is nevertheless implied, such an inference is justified only if the testator's intention to that effect is so clear as to be beyond reasonable doubt; [1] it must not rest upon mere conjecture nor arise wholly from the disinclination of a court to declare a partial intestacy.

It was said in *DeSilver's Estate,* 142 Pa. 74, 75, 76, 21 A. 882, 883: "The rights conferred by the intestate laws are only taken away by a will which effectually disposes of the entire estate of the decedent; and, while a

---

[1] For example, where there is a bequest over if the life tenant should die without leaving issue there is an implied bequest to the issue should there be any: *Beilstein v. Beilstein,* 194 Pa. 152, 45 A. 73; *Lippincott's Estate,* 276 Pa. 283, 120 A. 136; *Cope Estate,* 353 Pa. 306, 45 A. 2d 52.

construction is not to be adopted if it can be avoided, which will lead to an intestacy, interpretation is never to assume the proportions of reformation. The question is confined to the meaning of what the testator has said, and does not extend to the consideration of what he might have said but did not." In that case a testator bequeathed part of his residuary estate in trust to pay the income to his brother and sister for their respective lives, the one-half to each, and upon the death of either to pay such one-half to his or her children. The brother died without issue. It was held that an intestacy resulted as to his share of the income and that there was no implied bequest of it to the sister.

There are several other cases in our reports in which testamentary provisions were closely similar to those in the present will, and in all of them it was held that where the testator had thus failed to make provision for a contingency which actually happened, or to cover circumstances which subsequently resulted, a decree of intestacy was unavoidable. Reference may be made to *Nebinger's Estate, Landis's Appeal,* 185 Pa. 399, 39 A. 1049; *Filbert's Estate,* 195 Pa. 295, 45 A. 733; *Corr's Estate,* 202 Pa. 391, 51 A. 1032; *Smith's Estate,* 210 Pa. 604, 60 A. 255; *Grothe's Estate,* 229 Pa. 186, 78 A. 88; *English's Estate,* 242 Pa. 545, 89 A. 680; *French's Estate,* 292 Pa. 37, 140 A. 549; *Kidd's Estate,* 293 Pa. 56, 141 A. 730; *Knox's Estate (No. 2),* 328 Pa. 188, 195 A. 34; *Jacobs' Estate,* 343 Pa. 387, 22 A. 2d 744.

In *Grothe's Estate* and in *French's Estate,* supra, the Court, construing the wills there under consideration, refused to find implied bequests or cross limitations in the absence of language disclosing, either expressly or by clear implication, any such intention on the part of the testator. The interpretation of such wills is not to be controlled by the mere mechanical application of the maxim that a testator presumably does not intend to die intestate as to any part of his estate, for, as in some other instances of contradictory

maxims, there exists a rule of construction of equal force and dignity which runs counterwise, namely, that the heir at law is not to be disinherited except by express words or necessary implication: see *Bruckman's Estate*, 195 Pa. 363, 367, 45 A. 1078; *Grothe's Estate*, 229 Pa. 186, 190, 78 A. 88, 90; *French's Estate*, 292 Pa. 37, 41, 140 A. 549, 550.

Appellants, pointing out that testatrix deliberately cut her brother Harry off with a nominal gift of $5, argue that she could scarcely have intended that he or his children should now obtain a comparatively large portion of her estate. This contention, however, is without merit because, even though an heir be expressly excluded by a will, he takes, nevertheless, if an intestacy results, since his taking is not by reason of the will but, under the intestacy, by operation of law: *Bruckman's Estate*, 195 Pa. 363, 45 A. 1078; *Gibbons's Estate*, 317 Pa. 465, 468, 177 A. 50, 51; *Habecker's Estate (No. 1)*, 43 Pa. Superior Ct. 86.

As the intestate law applied from the moment of the death of testatrix as to all property not disposed of by her will, the heirs entitled are her brother and two sisters who were living at that time: *Knox's Estate (No. 2)*, 328 Pa. 188, 191, 195 A. 34, 35; *Leopold Estate*, 356 Pa. 543, 548, 52 A. 2d 458, 460; *McFarland Estate*, 155 Pa. Superior Ct. 466, 38 A. 2d 490. They are entitled to immediate distribution of their respective portions because, unlike the situation in *Lockhart's Estate*, 306 Pa. 394, 405, 159 A. 874, 877, 878, where the Court held that the whole principal of the estate had to be preserved intact because the beneficiaries were entitled to payments of income out of the estate as an entirety, in the present case testatrix specifically provided for distribution of a share of principal on the death of each nephew leaving issue surviving, so that it was obviously her intention that each such share was to be treated as a separate and distinct portion detachable from the estate as each nephew died.

It is urged by appellants that even if an interpretation of the existence of cross limitations be rejected the share of J. Arthur Lindsay should nevertheless pass to the children of the four nephews because of the provision of section 15(c) of the Wills Act of 1917, P. L. 403, that "Unless a contrary intention shall appear by the will, such a real or personal estate, or interests therein, as shall be comprised or intended to be comprised in any devise or bequest in such will contained, which shall fail or be void by reason of the death of the devisee or legatee in the lifetime of the testator, or by reason of such devise or bequest being contrary to law, or otherwise incapable of taking effect, or which shall be revoked by the testator, shall be included in the residuary devise or bequest, if any, contained in such will. In any case where such devise or bequest which shall fail or be void, or shall be revoked as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary devisees or legatees, if any there be, in proportion to their respective interests in such residue." This provision has no application in the present case because there is no devise or bequest "incapable of taking effect" within the meaning of the statute; section 15(c) of the Wills Act does not affect an undisposed of share: *Knox's Estate* (*No. 2*), 328 Pa. 188, 192, 195 A. 34, 35, 36; *Rickenbach Estate*, 348 Pa. 121, 125, 34 A. 2d 527, 529.[2]

---

[2] The law in this respect will be changed by the Wills Act of 1947, (Act No. 38) which goes into effect January 1, 1948, and applies only to the wills of persons dying on or after that date. That act provides in section 14 (9) that "A devise or bequest not being part of the residuary estate which . . . *is undisposed of* . . ." shall (under certain specified circumstances) be included in the residuary devise or bequest, if any, contained in the will, and in section 14 (10) that when such a devise or bequest shall be included in a residuary clause of the will it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue.

The will of testatrix provided that upon the death of any of the nephews leaving lawful issue one-fourth of the principal of the trust fund should be distributed and paid over to the *"children and heirs at law* of the one so dying."* It is argued by French Swartz Anderson that the term "heirs at law" should be regarded as synonymous with "children". Being used, however, *in addition to* the word "children", it must be given a significance of its own; it cannot be ignored as mere surplusage or duplication. Since a surviving wife is a statutory heir of her deceased husband (*Barnard Estate,* 351 Pa. 313, 315, 41 A. 2d 578, 579) it follows that the court was right in recognizing the widows of Joseph H. Lindsay and Warren W. Swartz as beneficiaries entitled to share with the children the respective portions of the trust fund of which the income had been bequeathed to their husbands.

Decree affirmed; costs to be paid out of decedent's estate.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

I dissent from the ruling of the majority. According to my understanding of the law applicable to the facts, here present, the portion of the residuary trust estate testamentarily referable to J. Arthur Lindsay, who died without "leaving lawful issue surviving", is distributable, by virtue of Sec. 15(c) of the Wills Act of 1917, to the "children and heirs at law" of the testatrix's other "nephews" as the surviving *residuary* legatees (the same being the "children and heirs at law" of the two brothers and the cousin of J. Arthur Lindsay) in proportion to their respective interests in the *whole* of the *residuum.*

The answer to the question basically involved depends, preliminarily, upon whether the bequest to the "children and heirs at law" of J. Arthur Lindsay of one-fourth of the trust estate in remainder *failed* by reason of its being "incapable of taking effect". If it did,

then, unquestionably, Sec. 15(c) of the Wills Act of 1917 became operative to determine the disposition to be made of the property embraced by the bequest, once freed from the trust. However, this Court now holds otherwise; and I fail to see how it can possibly be said that the bequest in question did not fail. If it didn't, then what became of it? Certainly, no effect is being given to it. Yet, it was fully capable of endowing the "children and heirs at law" of J. Arthur Lindsay with one-fourth of the residual trust fund in remainder had he died leaving issue surviving. But, since he died without leaving issue surviving, the bequest to his children and heirs at law (which otherwise would have been effectual) necessarily failed but *only* because of a want of the beneficiaries so designated. The property, now in controversy, undeniably constituted *a part of the general residuary estate* which the testatrix placed in trust by her will for the duration of certain lives. Furthermore, in like testamentary manner, she plainly attempted to make ultimate and final disposition in remainder of the whole of the residual corpus. Had J. Arthur Lindsay died in the lifetime of the testatrix, not leaving issue surviving, and had the testatrix thereafter not made any change in her will, would it be contended that the bequest of one-fourth of the residue to J. Arthur Lindsay's "children and heirs at law" did not lapse? The situation can be no different because J. Arthur Lindsay happened to survive the testatrix but died (five years later) without leaving issue surviving.

The bequest having failed by reason of its being "incapable of taking effect" and being "contained in the residuary clause of such will", it follows as a necessary corollary that Sec. 15(c) forthwith became applicable. The lapsed residuary share should, therefore, "pass to and be divided among the other residuary devisees or legatees . . . in proportion to their respective interests in such residue", as the statute directs in the circumstances. It begs the question to assume that a *pro tanto*

intestacy ensued with respect to the ineffectual bequest to the "children and heirs at law" of J. Arthur Lindsay and thereby conclude that the share of the trust corpus allocated to his line did not fall back into the residue as a failed bequest.

The majority opinion summarily disposes of Sec. 15(c) with the bald statement that "This provision has no application in the present case because there is no devise or bequest 'incapable of taking effect' within the meaning of the statute; section 15(c) of the Wills Act does not affect an undisposed of share: [citing] Knox's Estate (No. 2), 328 Pa. 188, 192, 195 A. 34, 35, 36; Rickenbach Estate, 348 Pa. 121, 125, 34 A. 2d 527, 529". The *Rickenbach* case, itself citing *Knox's Estate*, supra, does contain the statement that Sec. 15(c) "does not affect an undisposed of share". But, that statement is of no conceivable point to our present question which arises from the failure of a bequest in favor of certain nonexistent legatees *under a residuary clause of a will,* there being other designated residuary legatees capable of taking.

*Knox's Estate* has no bearing on the question here involved. *There was no legacy to lapse in Knox's Estate* and, therefore, none lapsed. It so happens that Sec. 15(c) was urged upon this Court in that case, but, in the very nature of the circumstances there present, Sec. 15(c) was not properly invoked. Consequently, the decision in the *Knox* case does not, nor could it have been intended to, constitute a construction or application of Sec. 15(c). It is true that, in answering the fallacious contention there made, that there was a bequest to Hugh which was "otherwise incapable of taking effect" and which accordingly failed, this Court did say that ". . . *this bequest does take effect; it passes to distributees designated by the intestate law,* and therefore does not go to the [testator's] three surviving children alone; it is not a lapsed legacy". (Emphasis supplied.) Of course, that statement could not have been intended to

mean that there was a bequest under the *Knox* will of a lapsed legacy which took effect *as a testamentary disposition* "to distributees designated by the intestate law". The intestate law, as is well known, operates wholly independently of and never in relation to a testation. Consequently, a testamentary distribution by virtue of an intestacy could hardly have been contemplated as having prevented a legacy from lapsing. This Court's meritorious answer to the contention made in the *Knox* case was that there was *neither a devise nor a bequest* to Hugh or to any one of his line after his death. In short, there was no bequest to lapse. What was said in that case is, therefore, not presently in point in any event.

The devise in dispute in the *Rickenbach* case was specifically held to have vested in the named devisee (a daughter, Viola) upon the death of the testatrix subject to possible divestment later in favor of after-born children of Viola should she die before a sale by trustees could be made of the devised property and the proceeds distributed. Viola died without leaving children but left surviving a husband who took her share as her devisee. Obviously, Sec. 15(c) was of no bearing in that situation, and the statement in the *Rickenbach* case that "It [i. e., Sec. 15(c)] does not affect an undisposed of share" was but *obiter* gratuitously laid upon *Knox's Estate*. True enough, Sec. 15(c) "does not affect an undisposed of share". That is necessarily and uniformly so. Sec. 15(c) is applicable only to cases of failed or void devises or bequests *of parts of the residuary estate* and you never have an undisposed-of share in the case of a will containing a general residuary clause. Why a failed or void bequest of *a share in the residue* was formerly distributed according to the intestate law was because of the peculiar English rule which the second sentence of Sec. 15(c) was specifically inserted to offset as we shall hereinafter see.

The majority appear to find implied confirmation for their conclusion in the changes wrought in existing law [1] by Sec. 14(9) and (10) of the Wills Act of 1947 [2] (effective January 1, 1948), emphasizing in that connection, as an apparently controlling change, the addition of three words—"is undisposed of"—made by Sec. 14(9) of the new Wills Act. Presumably, the amendatory words were inserted as a concession to the statement in *Rickenbach's Estate,* supra, that "Section 15(c) of the Wills Act of 1917 . . . does not affect an undisposed of share". But, however that may be, Sec. 14(9) of the new Wills Act by its terms has to do with lapsed and void devises and bequests *"not being part of the residuary estate"*, while the instant case is concerned with a bequest which is *included in the residuary clause of the will*. It is clear, therefore, that Sec. 14(9) of the new Wills Act affords no argument relevant to the question here involved.

It is Sec. 14(10) of the new Wills Act which contains the provision cognate to a bequest *"included in* [the] *residuary clause of the will"*, such as we have here. And, while Sec. 14(10) makes some changes in existing law, it is *not* because of their effect that the J. Arthur Lindsay share in the trust estate would go to the surviving residuary remaindermen had the testatrix died after January 1, 1948. The rule of law that will work such a result under the new Wills Act is that portion of Sec. 14(10) which carries forward *unchanged* the pertinent provision of Sec. 15(c) of the Wills Act of 1917. In other words, if the surviving residuary remaindermen would take the J. Arthur Lindsay share in the trust estate under the present will (assuming the testatrix died after January 1, 1948) by virtue of Sec. 14(10) of the new Wills Act, as the majority opinion implies would be the case, then, on a parity of reasoning, the residuary

---

[1] Sec. 15(c) of the Wills Act of 1917.

[2] See footnote 2 of the majority opinion.

remaindermen should now take the same interest under Sec. 15(c) of the Wills Act of 1917. The new Wills Act has not made any *presently* material dispositive change in existing law as a comparison of the statutes will readily disclose.

Thus, Sec. 14(10) of the new Wills Act provides that *"When a devise or bequest* [lapsed or void] . . . *shall be included in a residuary clause of the will* and shall not be available to the issue of the devisee or legatee under the provisions of [the favored relative] clause [ante] . . . , and if the disposition shall not be otherwise expressly provided for by law, *it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue"*. (Italics supplied for identification later.) The comment at page 56 of the report of the Joint State Government Commission (1947) states that Sec. 14(10), as above quoted, "replaces the second sentence of Sec. 15(c) of the 1917 act, . . .". The comment then states that the added words ("shall not be available" etc. under the "favored relative" clause) "give statutory recognition to the conclusion of Desh's Est., 321 Pa. 286, which held that other residuary shares are not increased so long as issue of the favored relative survive the testator". But, the "favored relative" clause is not material to the facts of the instant case, so the first added clause furnishes no pertinent argument even by implication. Again, the other words of Sec. 14(10) which also are new (viz., "if the disposition shall not be otherwise expressly provided for by law") merely specify a contingency in the event whereof Sec. 14(10) will not become operative. And, by like token, that clause adds nothing materially dispositive to what the existing law (Sec. 15(c)) already contains. Eliminating, therefore, the specified new clauses of Sec. 14(10) (which have no bearing on our present question), it will be seen that the new Wills Act (Sec. 14(10)) provides what in material regard the above-italicized portions embrace, viz.,

"When a devise or bequest [lapsed or void] . . . shall be included in a residuary clause of the will . . . , it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue", which is precisely the same as the second sentence of Sec. 15(c) of the Wills Act of 1917 now provides, viz., "In any case where such devise or bequest which shall fail or be void, or shall be revoked as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary devisees or legatees, if any there be, in proportion to their respective interests in such residue".

Unfortunately, this Court's present ruling brings about the very situation which Mr. Justice MITCHELL, upon a former occasion, so vividly and forcibly denounced in *Gray's Estate,* 147 Pa. 67, 74-75, 23 A. 205, as being the result of an irrational rule, and which the second sentence of Sec. 15(c) of the Wills Act of 1917 was designedly enacted to obviate: see Note at page 69 of the Report of the Commission to Codify and Revise the Law of Decedents' Estates (1917). While, ordinarily, a lapsed legacy has always fallen into the residuary estate, the English rule, formerly followed in this State, was to other effect where the legacy which failed *was itself a part of the residue.* In such event, an intestacy *pro tanto* occurred and the quantum of the legacy went to the next of kin. The rationale of the English rule, which Mr. Justice MITCHELL characterized "as wrong in principle and subversive of the great canon of construction, the carrying out of the intent of the testator", lay in the sophism that residuary legatees are "given specific portions of the residuum, and [can] not take more by the intent of the will . . .". As to that, the same learned Justice said (p. 74),—"The rule thus established does not commend itself to sound reasoning, and is a sacrifice of the settled presumption that a testator does not mean to die intestate as to any portion of

his estate, and also of his plain actual intent, shown in the appointment of general residuary legatees, that his next of kin shall not participate in the distribution at all".

The instant case peculiarly gives point to the above-quoted authoritative observation. Here, the testatrix, after cutting off her brother and his line of descent with a five dollar bequest to him, gave one-half of the residue of her considerable estate outright to her two sisters in equal shares. The remaining one-half of the residue she placed in trust with the directions to the trustee to pay the income therefrom to her two sisters or the survivor of them for life and, upon the death of the survivor, then to her four nephews (being the sons of the same two sisters) for their lives with the provision that one-fourth of the corpus of the trust estate should be distributed among the children and heirs at law of a nephew upon his dying "leaving lawful issue surviving". Thus, the testatrix clearly indicated her testamentary intent that the residuary trust estate should ultimately be distributed among the children and heirs at law of persons in the line of descent from her two sisters and, on the other hand, demonstrated an equally clear intent that her brother and those claiming under him should not participate in the distribution of the residue of her estate. The vice of this Court's present decision lies not only in the fact that the children and heirs at law of the testatrix's nephews will not receive aggregately in remainder the entire residuary trust corpus but also in the further fact that the estate of the deliberately excised brother will receive under the intestate law an inheritance of more than ten thousand dollars from the estate of the testatrix. It would be difficult to imagine a more classical illustration of the kind of situation which Sec. 15(c) of the Wills Act of 1917 was designed to correct: cf. *Thompson's Estate*, 304 Pa. 349, 355, 155 A. 925.

296

Accordingly, I think the decree should be reversed with directions that the fund in controversy be "divided among the other residuary devisees or legatees" (i. e., the "children and heirs at law" of the testatrix's nephews) "in proportion to their respective interests in such residue".

Mr. Justice LINN and Mr. Justice PATTERSON join in this dissent.