## Bonham Estate.

Argued May 26, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Wentworth D. Vedder, III,* with him *Morris & Vedder,* for appellants.

*W. W. Van Baman,* with him *George Hay Kain,* and *Kain, Kain & Kain,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, June 30, 1958:

Rebekah L. Bonham died testate leaving a will dated December 10, 1912, and probated in York County, in which she named the Guardian Trust Company as executor and trustee. The trust was for the benefit of three daughters, Elizabeth S. Bonham, Amy Bonham and Eleanor Bonham, to invest the principal and pay the income annually in equal parts to the beneficiaries named, with a gift over upon the decease of any of her daughters without children. In the event any of

the daughters died without issue, then her share should go to the surviving daughter and the issue of any deceased daughter, per stirpes, upon the same trust as theretofore set forth.

Two of the daughters, Amy Bonham Sullivan and Eleanor Bonham McCoy, died without issue, leaving Elizabeth S. Bonham as the only surviving daughter of the testatrix. She is now past 82 years of age; and it is admitted that she has never married and is incapable of bearing children.

On her petition to do so, the orphans' court terminated the trust, concluding that the entire corpus is now vested absolutely in the petitioner, Elizabeth S. Bonham, and directed the trustee to file its final account. The pertinent portions of the will of Rebekah L. Bonham appear on the margin hereof.[1]

The question raised by these circumstances is whether the surviving sister is now entitled to a termination of the trust, and to receive the corpus of the trust upon such termination. The answer rests upon a determination of the testator's intention as evidenced by the words of her will; and we find that the case is controlled by *Haydon's Estate,* infra.

In *Haydon's Estate,* 334 Pa. 403, 405, 407, 6 A. 2d 581, the testator made bequests to each of his daughters,

---

[1] "All the rest, residue and remainder of my estate, real, personal and mixed . . . I . . . devise and bequeath unto my Executors . . . In Trust for my daughters, in equal shares . . . to invest and keep . . . invested for the benefit of said daughters, to collect the income and pay it over to them quarterly . . . during [their] . . . natural lives . . .

"After the decease of either of my daughters, then I direct that the share of such daughter, should she leave children, shall be paid . . . to such children and issue of deceased children . . . per stirpes.

"Should any of my daughters die without issue, then the share of her estate shall go to her surviving sisters and the issue of any deceased sister per stirpes. . ."

Bertha and Mary. The gift to Mary read as follows: "I give to my daughter Mary Haydon the same amount, [as was given to Bertha] Fifty thousand dollars to be placed in trust. . ., the interest on which to be paid her semi-annually during her life. If she dies without issue the said sum of Fifty thousand dollars will revert to her sister Bertha H. Morris." There was a like provision with a gift over to Mary in case of the death of Bertha H. Morris. The residuary clause gave the residue of his estate to his wife for life, and provided that upon her death the executor should divide the residue between the two daughters or their direct heirs in blood relation. Bertha died without issue and her fund in the trust was awarded to Mary by the orphans' court in accordance with the gift over to her. Mary died without issue. The trustee filed an account of the second trust and asked the court to distribute the balance. Relying upon *Boies' Estate,* 177 Pa. 190, 35 A. 724; *Kelly v. Pennsylvania Railroad Company,* 226 Pa. 540, 75 A. 734; *Gunnell's Estate,* 269 Pa. 343, 112 A. 450, this Court held that the interest which Mary had under the will was a fee rather than a mere life estate, and the direction that the fund be held as a trust during Mary's lifetime was for the purpose of relieving Mary of the burden of proper administration thereof, and did not show an intention to cut down her bequest to a life estate. We also declared that Mary received an interest in fee, subject only to the condition that if she died without issue, her estate should pass to her sister. We there posed the question: "Does the gift over of Mary's share take effect upon Mary's death without issue where Bertha has already died without leaving issue?" We held that "'. . . mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful. . .'"; and that *"where an absolute estate is de-*

*vised followed by a gift over in the event of the death of the donee without issue, the rule of construction that is applied in the absence of a contrary intention is that the gift over will be construed as referring to death without issue in the lifetime of the testator*: Mickley's Appeal, 92 Pa. 514; Lerch's Estate, 309 Pa. 23 [159 A. 868]. *But where the will indicates that the testator contemplated that the death of the legatee without issue might occur after his own death this rule of construction does not apply. . . 'The rule is never applied where the first takers referred to are treated as living at a period subsequent to the death of testator.'* In the instant case the provisions that the trustee should pay the interest from the two funds to the daughters during their lives indicates conclusively that the testator regarded them as surviving him, for it is obvious that the duty to make the payments could not arise until after the testator's death." (Italics supplied). See also *Burpee Estate,* 367 Pa. 329, 335, 80 A. 2d 721.

It is clear that the testatrix in the instant case did not intend to die intestate as to any part of her estate, since the sole purpose of the gifts over was to vest the decedent's estate in the survivor. When Amy died without issue, the gift over became effective to transfer her share to Elizabeth and Eleanor; and upon Eleanor's death without issue, the gift over became effective to transfer the entire trust corpus to Elizabeth, in fee.

Counsel for appellants contend that *Verner Estate,* 358 Pa. 280, 56 A. 2d 667, governs the instant case. In that case there was a bequest of life estates to four nephews; and upon the death of any of them leaving "issue surviving," then to his "children and heirs at law." One nephew died without leaving any children.

We think that *Verner Estate* is inapposite. In the words of the learned court below, "under these facts, there was a clear omission which the court was without

authority to supply"; and we thus properly declared a partial intestacy as to the nephew's one-fourth interest, for the testatrix had definitely failed to provide for the contingency that one of the nephews might die without children. See also *Wainwright's Estate*, 376 Pa. 161, 101 A. 2d 724.

The appellant conceded that if Eleanor Bonham McCoy and Amy B. Sullivan have no interest in the principal of the Rebekah L. Bonham Estate, then the trust may be terminated. Nor is this case controlled by *Bosler Estate*, 378 Pa. 333, 107 A. 2d 443, in which this Court refused to terminate *spendthrift* trusts. There were no spendthrift provisions in the instant trusts.

The decree of the learned court below is affirmed; costs of the proceeding to be paid out of the funds of the trust.

Mr. Justice BELL dissents.