### DeLong Estate

*Frederick E. Smith,* for accountants.

*John J. Lombard, Jr.,* for executors of widow and daughter.

*Paul M. Eyster,* for testator's next of kin.

SATTERTHWAITE, *P. J.*, October 28, 1975—The second account of First Pennsylvania Bank N.A. and Myrtle May DeLong (now deceased, by her executors), trustees of the residuary estate of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on August 4, 1975, as advertised according to law . . . A substantial question for adjudication was presented involving the construction and interpretation of decedent's will with respect to the disposition to be made of the remainder after life estates in a factual situation not expressly contemplated in so many words by the testamentary language. The facts are not disputed, and the question has been submitted to the auditing judge on briefs without supplementation of the averments of the petition for adjudication.

Decedent died November 3, 1955, survived by a widow, one daughter, and certain collaterals including two sisters, a brother, and issue of deceased half-brothers. By his will, decedent gave half of his estate outright to his widow, Myrtle May DeLong,

and then gave the residue upon the trusts presently in question. Relative thereto he provided that one-half of the income be paid to his wife, Myrtle May DeLong, for life and that the other half of the income, and after the death of his wife all of the income, be paid to his daughter, Marie Louise De-Long (later Marie Louise Hightower) for life, with an alternative provision that should his daughter predecease his wife then to pay all of the income to his wife for life. Then followed the language presently in question:

". . . upon the death of my said daughter, provided her mother be then deceased, upon the further trust to pay, convey, assign and distribute the corpus or principal of my residuary estate, unto any child or children of my said daughter that may then be living . . . [or issue, per stirpes]. . . Should my said daughter die without leaving issue, then to pay, convey, assign and distribute my said residuary estate, to such persons as would take my estate under the Intestate Laws of the Commonwealth of Pennsylvania."

Decedent's daughter, Mrs. Hightower, died May 24, 1969. She left no children surviving, apparently never having had a child or children. Decedent's widow, Myrtle May DeLong, died on May 27, 1974. Thus, the will made no explicit provision, as it did for income, with respect to disposition of corpus in the eventuality which actually did come about, viz., death of the daughter, Mrs. Hightower, prior to the death of her mother, testator's widow.

The respective executors of the estates of testator's deceased widow and daughter contend that an intestacy has resulted as to these remainders, and, since the widow and daughter constituted decedent's sole heirs at law at his death in 1955, their

estates should now be awarded the corpus. The collaterals, on the other hand, argue that the intention and effect of testator's language was to make gifts in remainder after the death of both life tenants, regardless of which died first, either to the daughter's issue or, if none, then to those entitled under the intestate law who would be ascertained as of the time of the termination of the life estates.

It is unquestionably true, as argued on behalf of the representatives of the estates of the widow and daughter, that where a testator has failed to make provision for a contingency which actually comes about, or to cover circumstances which did subsequently result, he must be regarded as having died intestate with respect thereto, and no court has the power to reform the instrument so as to supply the deficiency in the belief that such would have been the disposition which might be thought to have been provided by the testator had his attention been called thereto: Verner Estate, 358 Pa. 280, 56 A.2d 667 (1948); Berger Estate, 360 Pa. 366, 61 A.2d 855 (1960).

On the other hand, as specifically recognized in Verner, 358 Pa. at 284, judicial construction of the testamentary language may, if testator's intention is sufficiently demonstrated, permit the *implication* of provisions not precisely spelled out:

"While judicial interpretation of a will is aimed to ascertain the intention of the testator and may therefore, in some instances, lead to the conclusion that a bequest, though not formally expressed in the will, is nevertheless implied, such an inference is justified only if the testator's intention to that effect is so clear as to be beyond reasonable doubt; it must not rest upon mere conjecture nor arise wholly from the disinclination of a court to declare a partial intestacy."

Thus, in Riegel v. Oliver, 352 Pa. 244, 42 A.2d 602 (1945), where the devise was to testator's daughter for life, remainder to her children "but if all of said children, if any, shall die without lawful issue before attaining the age of twenty-one years, then I do give and devise the same to my son George," and where the daughter died never having had children, the Supreme Court held, reversing this court, that even though testator's express words contemplated only the situation of the actual existence and subsequent death of the daughter's children without issue, nevertheless, his intention was sufficiently to be implied to pass the realty to George upon the death of the daughter without issue, regardless of how such failure of issue came about.

In March Estate, 357 Pa. 216, 53 A.2d 606 (1947), testator created a trust for his son's education and maintenance for life with particular remainders over upon the death of the son "while any of said trust fund . . . is still in the hands of the trustee." The court held that notwithstanding the son's death in testator's lifetime so that no trust estate ever came into "the hands of the trustee," the remaindermen were entitled, the son's predecease having accelerated the remainders and the testamentary reference to the effective time thereof to have been "purely *directory* and manifestly did not contemplate a condition or contingency." While the testator had not in so many words provided for the predecease of his son, he did do so by implication from the whole tenor of the will.

In Wainwright Estate, 376 Pa. 161, 101 A.2d 724 (1954), the will created a trust providing for life estates for the two sons of testatrix with detailed remainders upon the death of both either with or

without issue but with no express disposition where one died leaving issue and the other died thereafter without issue, the eventuality which actually came about. The Supreme Court affirmed the lower court's finding of an implied limitation over to the issue of the son who had died earlier, overruling the contention of an intestacy made by the executors of the son who had died without issue. Justice Stearne observed, 376 Pa. at page 163:

"Where a testator fails to make provision for a contingency which actually happens, courts do not have authority to insert a provision and supply the omission under the assumption that it was the intent of the testator."

He further pointed out, however, 376 Pa. at page 166, after demonstrating that the lower court had not purported to supply an omission but had really regarded the matter as finding a gift by implication:

"The basic philosophy of the doctrine of *implied gifts,* as here involved, stems from the familiar situation where the gift is 'to A for life and if A leaves no issue then to B'. Should A leave issue, it is a well established canon of construction that there is an implied gift to such issue. . . . There is respectable authority that, similarly, where there is a gift for life to two individuals and if they leave issue then to such issue, but if they leave no issue then to another, and one life tenant leaves issue and the other does not, the entire fund, as an implied gift, passes to the issue of the person so dying."

See, also, Hill Estate, 432 Pa. 269, 247 A. 2d 606 (1968); Porter Estate, 36 D. & C. 2d 88 (1965); and Hess Trust, 21 Fiduc. Rep. 131, 51 D. & C. 2d 178 (1971). (By a strange coincidence, Hess was concerned with exactly the same background factual circumstances and family situation as presented by

the case now before this court; the death of Marie Louise DeLong Hightower as the only child of Warren B. DeLong, surviving him but prior to the death of her mother, Myrtle Mae DeLong, and without issue. There, an entirely different third party's inter vivos trust was involved, of which Warren B. De-Long had been the life tenant. The Philadelphia Orphans' Court Division found an implied gift to Warren B. DeLong's widow and heirs at law, rather than a reversion to the original settlor's estate, to be properly deduced from the trust instrument, notwithstanding that the occasion for the gift over to the widow and such heirs at law provided for therein did not specifically contemplate the failure of the issue of Warren B. DeLong at a time subsequent to his death.)

In the instant case, the auditing judge believes it to be obvious and self-evident that decedent desired his estate to be held for the benefit of both his wife and his daughter for their respective lives and, upon the death of both and regardless of who died first, then to go to direct descendants in the younger generation, or generations, if any, and if his lineal descendants were then nonexistent, to those of those of his collaterals who would then constitute his next of kin by law. While he inserted the clause "provided her [the daughter's] mother be then deceased" in referring to the time of distribution of the remainder to the daughter's issue, it is patent that he was merely thereby recognizing the possible delay in such distribution pending the termination of *both* of the life estates previously limited. Such phraseology was in no sense a condition upon the actual gift of the remainder to issue; if the daughter had had children, their interests would have vested

at decedent's death, subject to being divested if they died prior to the daughter's death. Compare Phillips Estate, 58 D & C. 2d 440 (1971). Since she did not have issue, however, such vesting never occurred and the gift over to decedent's intestate heirs would be to those ascertained as of the time of distribution when such gift in remainder would take effect in enjoyment: Section 14(4) of the Wills Act of April 24, 1947, P. L. 89, as amended, 20 P.S. §180.14(4), now §2514(4) of the Decedents, Estates and Fiduciaries Code of June 30, 1972, P. L. 508 (No. 164). Since testator's wife and daughter were both then deceased, their respective estates would not be included in such distribution, which, accordingly, is hereby directed to be made to and among testator's collateral heirs as aforesaid.

No other questions for adjudication were stated in the petitition for adjudication, nor were any apparent to the court from the record.

The net ascertained balances for distribution are hereby awarded as suggested by the last paragraph of the petition for adjudication pursuant to the will of the decedent, a copy thereof attached to the petition for adjudication being incorporated herein by reference. Interest on the Florence Moyer judgment, as and when received by accountants, shall be allocated as provided by stipulation of counsel filed of record on October 6, 1975.

A schedule of distribution in conformity to the within adjudication and to implement the foregoing awards shall be filed by accountants in due course.

The account is hereby confirmed, and it is ordered and decreed that accountants, trustees as aforesaid, shall make and pay the distributions

herein awarded forthwith upon the absolute confirmation of the schedule of distribution herein directed to be filed.

And now, October 28, 1975, the within adjudication is directed to be filed and is hereby confirmed nisi.