## Bruckman's Estate.

*Will—Construction—Heir at law.*

The heir at law is not to be disinherited except by express words, or by a necessary implication. Mere negative words are not sufficient to exclude the heir or next of kin.

*Wills—Intention of testator.*

In construing a will, the object of the court is to ascertain, not the intention simply, but the expressed intention of the testator, i. e., the intention which the will itself, either expressly or by implication declares, or (which is the same thing) the meaning of the words, the meaning, that is, which the words of the will, properly interpreted, convey.

The question in expounding a will is not what the testator meant, but what is the meaning of his words.

*Wills—" Personal estate "—Intention.*

Where there is nothing in a will to indicate that the testator in using the words " personal estate " intended to use them in other than their usual sense, the court will not enlarge their meaning so as to include real estate, in order to create and enforce a mere supposed or possible intent which is not only not in harmony, but in actual hostility with the intent plainly expressed in the words actually used.

Testator left to survive him a widow, sister and niece, as his only relatives. In one clause of his will he declared that he would not give his niece one cent. By another clause he directed as follows: " I give and devise to my wife the house No. 925 Penn street and the one-half residue of my personal estate, and the other half to my sister, together with the house No. 927 Penn street during her lifetime and after her death to go back to my wife, and in case we have offspring the one-half is to go to our offspring." Testator had a large amount of other real estate, of which he made no mention in his will. *Held*, (1) that the words " personal estate " could not be enlarged in meaning so as to include the real estate not

specifically devised; (2) that there was an intestacy as to the real estate not specifically devised; (3) that the niece as an heir at law was entitled to a share of the real estate not specifically devised.

Argued Feb. 26, 1900. Appeal, No. 66, Jan. T., 1900, by Carrie H. Bruckman, from decree of O. C. Berks Co., April T., 1897, No. 60, dismissing exceptions to adjudication in the estate of George W. Bruckman, deceased. Before GREEN, C. J., MC-COLLUM, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Exceptions to adjudication.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*Jefferson Snyder, of Baer, Snyder & Zieber*, for appellant.— When the testator employs the language " the one-half residue of my personal estate," he uses the word " personal " in its ordinary everyday sense as " belonging to the person : " Camp v. Lockwood, 1 Dall. 393.

The course of decisions has been uniform that the intention of the testator must govern the construction of all wills. The intention is to be collected from the words of the will. The true mind of the testator is to govern : App v. Lutheran Congregation, 6 Pa. 209 ; Fetrow's Est., 58 Pa. 424.

The popular meaning of the words is the best criterion of the intent of a testator, and technical words of general import will be restrained, if coupled with provisions which are not applicable in the common acceptation thereof to particular species of property : Hunter's Est., 6 Pa. 97 ; Findlay v. Riddle, 3 Binn. 139.

A will must be so construed as to avoid a partial intestacy unless the contrary be unavoidable : Reimer's Est., 159 Pa. 212 ; Appeal of Board of Missions, 91 Pa. 513.

The words " all the residue and remainder of my personal estate " in a will were construed to mean " all the residue of my estate," the context indicating that the mind of the testatrix then went forward to the time when the executor should have turned the real estate into money : Monroe v. Jones, 8 R. I. 526 ; Tofield v. Tofield, 11 East, 246 ; Jacobs's Est., 140 Pa. 268 ; Reimer's Est., 159 Pa. 212.

Assuming that there was a partial intestacy, the testator must have intended his wife and sister to have the whole of his personal property and the two Penn street houses (the latter holding for life) and his wife, sister and niece to have, under the intestate law, the remaining real estate; upon the death of his sister, his wife or offspring were to have what the sister had held for life, and then out of the balance of the undisposed of estate the general pecuniary legatees were to be paid. Such a construction of the will is, we submit, in substantial accord with the ruling in Clery's App., 35 Pa. 54.

*Cyrus G. Derr*, for appellee, was not heard, but in his printed brief said: If the testator had used simply the word " estate " it would have carried both real and personal property. If he had used the words " real estate " they would have excluded the personal property. As he has used the words "personal estate," the real property is excluded.

As the phrase "personal estate" does not in law embrace realty, it cannot be helped or enlarged by a merely negative clause excluding Mary Miles, because such negative clause is simply ineffectual as to property not embraced in the phrase " personal estate," without an actual gift to some other definite object.

The item referring to Mary Miles is not inconsistent with the words " personal estate " used in the preceding item and understood according to their ordinary legal signification, and is not inconsistent with an intent on the part of the testator to die intestate as to his unmentioned real property.

OPINION BY MR. CHIEF JUSTICE GREEN, April 16, 1900:

The case before us is an appeal from a final adjudication of the orphans' court upon the account of the appellant as executrix of the last will and testament of the deceased husband. There is but a single question involved in the contest. It arises in this way. The decedent, George W. Bruckman, left a will in which after giving a legacy of three mortgages amounting to $3,500 to one Mary Jane Beyerle he made the following provision in clause three of the will. " Item 3d. I give and devise to my wife Carrie Bruckman the house No. 925 Penn street and the one-half residue of my personal estate, and the other

half to my sister Caroline Bruckman, together with the house No. 927 Penn street during her lifetime and after her death to go back to my wife, and in case we have offspring the one-half is to go to our offspring." The remainder of the will consists of gifts of a number of pecuniary legacies to three individuals and several charities. In the fourth clause he declared that he would not give his niece Mary Miles one cent.

In point of fact the testator was seized in fee at the time of his death of the two houses and lots Nos. 925 and 927 Penn street, three other brick dwelling houses, all in the city of Reading, and twenty-two building lots situated in an adjoining township. In no part of the will did the testator make any reference to any of his real estate except the two Penn street houses, nor did he use any expressions which had any relation whatever to any real estate. At his death he left surviving him his widow, the appellant, his sister Caroline Bruckman, and his niece Mary Miles, daughter of a predeceased sister. These were his only relatives and they were his only heirs if he had died intestate. The personal estate left by the testator amounted to $23,874.68 at the inventory price, but which left for distribution in the hands of the accountant $17,179.

At the hearing in the orphans' court it was claimed by Caroline Bruckman, the sister, and Mary Miles, the niece, that the decedent died intestate as to all his real estate except the two houses on Penn street, and that they were entitled to their shares thereof as his heirs at law under the intestate law of the commonwealth. The widow claimed that the testator intended to dispose of all his estate real and personal by the third clause of the will, and that he did not die intestate as to any part of his estate. The learned court below held that he did die intestate as to all of his real estate except the Penn street houses and made distribution accordingly. The only question at issue, therefore, is whether the decedent died intestate as to his real estate other than the Penn street houses.

It is perfectly manifest that if there had been no other real estate than the Penn street houses there could have been no question worth a moment's consideration, that the houses would have passed as real estate and the remaining property as personal estate under the third clause of the will. But as there was quite a considerable amount of real estate other than the

Penn street houses, the claim was made for the widow, that she was entitled to take practically the whole of the residuary estate as personalty, one half immediately, and the other half at the death of the sister. The conclusion reached by the learned court below was supported by a clear and forcible opinion with which we entirely concur, and it will therefore not be necessary for us to do more than indicate in a general way our reasons for affirming the decree. The question is one of interpretation only. The chief contention of the appellant is founded upon the proposition that a testator must be presumed to have intended not to die intestate. This is a wise rule and in cases where it is applicable is entitled to grave consideration, and in certain circumstances to actual enforcement for the purpose of interpretation where the meaning is doubtful. But it is of no more importance or influence than the equally well established rule that the heir at law is not to be disinherited except by express words or by a necessary implication. In Bender v. Dietrick, 7 W. & S. 287, we said, " It is a maxim which applies here as well as in England that an heir at law can only be disinherited by express devise or necessary implication; and that implication has been defined to be such a strong probability, that an intention to the contrary cannot be supposed." And in Hitchcock v. Hitchcock, 35 Pa. 399, we said, " And still another rule applies here, that mere negative words are not sufficient to exclude the heir or next of kin. There must be an actual gift to some other definite object." It is argued that the testator did express an intent to disinherit Mary Miles, but without considering that question critically it is a sufficient answer to say that the testator expressed no such intent as to his sister, and the principle contended for would disinherit his sister without any express words or necessary implication and is hence inapplicable to either. But this consideration reaches only to the application of two general rules, which so far as this case is concerned, are of opposing force and both rules being equally applicable neither controls. A far more important subject is the reading of the precise words of the will. The rule on this subject is well stated in Hawkins on Wills, p. 1, as follows : " In construing a will, the object of the court is to ascertain, not the intention simply, but the expressed intention of the testator, i. e. the intention which the will itself, either expressly or by implication

declares, or (which is the same thing) the meaning of the words, the meaning, that is, which the words of the will, properly interpreted convey." It is well illustrated by our own decision in Weidman's Appeal, 42 Leg. Int. 338, where we said, TRUNKEY, J., " The question in expounding a will is not what the testator meant, but what is the meaning of his words." This was followed in Hancock's Appeal, 112 Pa. 532, and we are thus clearly remitted to the question what is the meaning of the words which the testator employed in the third clause of the will relating to the residuary bequest. They are, " I give and devise to my wife Carrie Bruckman the house No. 925 Penn street and the one-half residue of my personal estate, and the other half to my sister Caroline Bruckman, together with the house No. 927 Penn street during her lifetime, and after her death to go back to my wife, and in case we have offspring the one-half to go to our offspring." There is not another word in the whole will which relates in the least degree to the residuary estate, or which even suggests that the testator had any other intent or meaning in relation thereto than that which is expressed in the words quoted. As to the meaning of those words it does not seem possible that there can be any misunderstanding. The testator owned real estate and he owned personal estate. Nothing is gained by indulging in refined distinctions as to the meaning of the words " personal estate." They are of the most common everyday use, they have no double meaning, there is not a spark of ambiguity in them or about them. In their ordinary and constant use, whether amongst professional persons or laymen, they mean goods, chattels, securities, moneys, and they do not mean lands and houses. Hence it is absolutely certain that the words used by the testator, and they were dictated by himself, declare in plain and unambiguous terms, that he gives one half of the residue of his personal estate to his wife and the other half to his sister during her life. The contention that these words mean that the testator intended to give his real estate as well as his personal is a strained and forced construction upon the theory of a supposed intention in hostility with the plain and natural meaning of the words. That this cannot be done to change the meaning of actual and unambiguous words has been so frequently ruled that an extended citation of the authorities is not necessary. A very

few references will be sufficient. Thus in Woelpper's Appeal, 126 Pa. 562, our Brother MITCHELL, delivering the opinion of the court said : " The question in expounding a will is not what the testator meant, but what is the meaning of his words. By this it was never intended to say that the testator's meaning when apparent can be disregarded, but that it cannot be got at aliunde, by what he might have meant, or even what under the circumstances he would have meant, but only by what he said." And in Huber's Appeal, 80 Pa. 348, we said, " But when the meaning is clear from language that is unmistakable the instrument interprets itself." In Reck's Appeal, 78 Pa. 432, it was said, SHARSWOOD, J., delivering the opinion, " All mere technical rules of construction must give way to the plainly expressed intention of the testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction."

It is supposed and is contended for the appellant, that under certain decisions cited in the argument, the language used in this will can be held to include real estate under the general designation of " personal estate." Of course where the will itself furnishes evidence that the testator meant to include real estate under such words as would ordinarily apply to personal estate only, the meaning of the whole will thus becoming doubtful, the manifest intent of the testator may be effectuated by enlarging the meaning of the words, not however to contradict the plain meaning of the words used, but to enforce the clear intent of the testator. Thus in Jacobs's Estate, 140 Pa. 268, it was held that a residuary clause in the following words, " the remainder and residue of my money I give and bequeath to the hospital of the Protestant Episcopal Church in Philadelphia," carried certain real estate with it to the residuary legatee, not otherwise disposed of. An examination of that case shows conclusively that it was decided upon its special circumstances. It was evident that the word " money " was not used in its restricted sense, because the legacies were just about equal to the value of the whole estate at the date of the will, and it consisted largely of mortgages, bonds and securities and some cash, and hence it was manifest that when the testatrix said " the residue of my money," she must have meant the residue of her

estate, otherwise the legacies could not have been paid. As to the real estate it was found as a fact that at the date of the will, and for some years afterwards, she had none at all, and that subsequently she invested a considerable part of her money and securities in the purchase of some real estate which she held at the time of her death. It was evident, therefore, that this real estate was a part of the estate which she did not own when the will was made, and its value was absolutely required to make up the amount of the legacies. For these reasons it was held that she used the word "money" in its larger sense of "property," and that it was necessary to so hold, in order to effectuate the plain intent of the testatrix. The concluding part of the opinion expresses this clearly, thus, "On the contrary we are dealing with the question of the intent of the testatrix to pass her entire estate under the name of 'money.' A careful consideration of the will gathered from within its four corners, leaves no doubt in our minds that she intended all the property to pass by the residuary clause and to disinherit her heirs at law."

It is sufficient to say that there are no such circumstances present in the case at bar, neither is there anything to indicate that the present testator had any general intent when he said "residue of my personal estate," to say residue of his real estate, or of all his estate real and personal. Nor is there any rule of construction that requires such a reading of the words used. On the contrary the other, and immediately connected words of the same clause of the will are altogether inconsistent with such a reading. He gave his widow the home No. 925 Penn street *and* the one-half residue of his personal estate, thus conclusively indicating that he did not suppose that the one-half residue of his personal estate would include the house. But if he had meant the one-half residue of his whole estate, the house would necessarily have been included as a part of his real estate. And so with the other points of appellant's contention. They are not by any means sufficient to justify a court in abandoning the plain meaning of the words actually used in order to create and enforce a mere supposed or possible intent which is not only not in harmony, but in actual hostility, with the intent plainly expressed in the words actually used. Upon a consideration of the whole case we are clearly of

opinion that there was no error in the ruling of the learned court below, and the assignments of error are all dismissed.

Decree affirmed and appeal dismissed at the cost of the appellant.