## Gibbons' Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

Van Dusen, Stearne, and Sinkler, JJ., dissent.

324

William I. Stanton and Alfred N. Keim, for exceptants.

John J. Green, contra.

PER CURIAM, June 22, 1934.—The question involved in this case is not free from difficulty, and we find after full consideration that the six judges who heard the case are equally divided in opinion. The respective views are set forth in the adjudication and in the dissenting opinion, and we see no occasion for further elaboration.

Accordingly, all exceptions are dismissed, and the adjudication is confirmed absolutely.

STEARNE, J., dissenting.—I am unable to concur in the opinion of the court. The Supreme Court, in construing this very will (Gibbons v. Connor, 220 Pa. 395), definitely and unequivocally declared that the testator did not dispose of the corpus of his estate. Necessarily, therefore, the testator died intestate as to corpus. I would adhere strictly to that interpretation.

True it is that in Gibbons v. Gibbons, 235 Pa. 24, the Supreme Court did say that upon the termination of the successive life estates in the children, the corpus passed "according to the terms of the will". Considered in connection with the prior decision and the terms of the will, I do not regard the later decision of the Supreme Court as reversing the former ruling.

Testator devised his real estate to his executors and trustees, in trust, to pay the rents, issues, and profits to his wife for life, and after her death "in trust to pay the said rents issues and profits" unto his five named children and their issue. He failed specifically to devise the corpus. Mr. Justice Fell, in Gibbons v. Connor, supra, p. 395, said: "There was no devise of the corpus of the estate." The Supreme Court twice decided (Gibbons v. Connor, supra, Gibbons v. Gibbons, supra) that the trust of "rents issues and profits" was valid and would be enforced until the death of the surviving child of testator. In the first case, upon application of a child, and in the second, upon a similar application of a grandchild, the Supreme Court refused to terminate the trust and to permit partition of the real estate. The last surviving child has died, the trust has terminated, and upon an account of the trustees the auditing judge was requested to determine whether the corpus passed to the grandchildren or whether there was an intestacy as of the date of the decease of the testator. He ruled that the grandchildren took the corpus.

The auditing judge's ruling is based upon the well-settled principle (still in full force in this State) that a devise of the rents, issues, and profits of the land passes the land itself both at law and in equity. Perhaps the leading case is France's Estate, 75 Pa. 220. And it makes no difference whether the estate is legal or equitable: Mifflin's Estate, 232 Pa. 25; Millard's Appeal, 87 Pa. 457; Beilstein et al. v. Beilstein, 194 Pa. 152; Shower's Estate, 211 Pa. 297; Schuldt v. Herbine, 3 Pa. Superior Ct. 65. This rule of law, however, is merely a canon of construction. It is a presumed intention. According to Jarman (2 Jarman on Wills, 1264), "it is said (to be) founded on the feudal law". He quotes Lord Cranworth in Blann v. Bell, 2 De G. M. & G. 775, 42 Eng. Rep. 1075.

But as pointed out by Jarman, supra, this is only the rule "In the absence of a context indicating a contrary intention". Also, it is said in Page on Wills, sec. 846: "in the absence of anything to indicate a contrary intention".

Chief Justice Agnew in Bentley v. Kauffman et al., 86 Pa. 99, 101, quotes the well-established rule and remarks: " . . . but the ground of the conclusion in such instances is that no contrary intent of the testator appears to sever the product from its source, and the fruits, therefore [in case of no contrary intent] carry with them that which bears them."

I have examined the authorities to ascertain what is regarded as an indication of a "contrary intention", to rebut the presumption that the testator intended to pass the fee by an unlimited gift of the rents, issues, and profits.

Perhaps the leading case is Kline's Appeal, 117 Pa. 139. Chief Justice Gordon wrote (p. 147):

"Of course, an unqualified gift of the income of land is to be taken as a gift of the land itself; but where, as in this case, that gift is qualified by a direction to, or power in, some one else to sell, it is clear that the gift must be confined to the income alone, for the intent to keep the two things separate and distinct is thus made manifest."

Thus, in the Kline case, the power of sale granted to the executors, revealed testator's intent not to pass the fee to the recipients of the income of the land.

Judge Penrose, in Joyce's Estate, 5 Pa. C. C. 179, 182, cited Kline's Appeal, supra, with approval, and decided that a power to improve real estate negatived an implied intention to pass the fee by a gift of income. He said that the distinction was immaterial between a power to sell and a power to improve. Judge Penrose cited also Bentley v. Kauffman et al., 86 Pa. 99, supra, quoting Chief Justice Agnew.

In the present will, there are three clauses which reveal testator's intent not to pass a fee by way of a gift of the rents, issues, and profits: (a) Item 8 gives a power to sell and to invest in (1) other real estate; (2) ground rents; (3) mortgages; (4) reinvestments; (b) item 6 directs the executor and trustees to appoint an agent to manage the real estate, and fixes his compensation; (c) item 7 directs that in case of vacancy in office of executor and trustee, a majority of his heirs shall appoint, and that no "one of his family" shall be named.

It would clearly appear that the present facts come directly within the exception to the general rule. Testator clearly and unequivocally demonstrates the intent "to sever the product from its source": Bentley v. Kauffman et al., supra.

I am not persuaded that the auditing judge must, as he states, "reject the intestacy theory unless all theories of construction fail." There exists an equally potent canon of construction that an heir is not to be disinherited unless by plain words or necessary implication: Grothe's Estate, 229 Pa. 186; Lippincott's Estate, 276 Pa. 283. That this latter rule should be applied is more impelling when it is observed that the testator gave his "heirs" the right to select a succeeding trustee. To this may be added the strongest reason of all, to wit, that the Supreme Court itself has already decreed that "there has been no devise of the corpus" which, of course, necessarily holds that there is an intestacy as to corpus.

There is one other reason which the auditing judge regards as controlling, and which he deems sufficient to rule against an intestacy. Probably the chief purpose for sustaining an active trust until the death of the surviving child was to exclude the spouses of children from participating in the estate. If an

intestacy of the corpus is decreed, there is a possibility that spouses may take some portion. This was regarded as a sufficient reason for passing the estate to the issue of the children and not to decree an intestacy. With this I disagree. It is one thing where heirs or next of kin take under a will, and quite another where such heirs take by operation of law. Where testator passes his estate under the intestate law, excluding individuals, the direction is valid: McGovran's Estate, 190 Pa. 375. On the other hand, even where an individual is expressly excluded by a will, and an intestacy results, the heir nevertheless takes. He takes, not by reason of the will, but under the intestacy created by operation of law. Under such circumstances, the heir is not excluded, irrespective of the provisions of exclusion in the will. See Bruckman's Estate, 195 Pa. 363. In the Bruckman estate the testator declared that he would not give one cent to his niece. He neglected, however, to dispose of his real estate, which passed under the intestate laws to his heirs, one of whom was the niece he attempted to exclude. Under these circumstances, the Supreme Court held that the niece took, irrespective of the clause of exclusion.

In my opinion, there is nothing in this will to justify the court in abandoning the plain meaning of the words actually used, in order to create and enforce a mere supposed or possible intent, which is not only not in harmony, but in actual hostility, to testator's expressed intent. More especially is this true where the Supreme Court has already so construed the will.

I would sustain the exceptions.

Van Dusen and Sinkler, JJ., join in this dissent.