## Kirchner's Estate.

Argued May 12, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*James I. McCormick,* Special Deputy Attorney General, with him *Harry J. Woodward,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*Howard F. Riley, W. A. Rex Schultze* and *Sidney E. Smith,* for appellee, were not heard.

*Henry M. Dubbs, Jr.,* for appellee.

*Alexander S. Bauer,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 26, 1941:

This appeal is from the refusal of the court below to award one-half of the balance remaining in the estate of Andrew Kirchner, deceased, to the Board of Trustees of Norristown State Hospital, which sum it claims to be entitled to under the terms of the decedent's will.

Andrew Kirchner died testate on March 5, 1937, leaving to survive him his widow, Wilhemenia Kirchner, who had been committed to the Norristown State Hospital, suffering from senile dementia, on September 17, 1936, where she remained until her death on January 13, 1938. By his will, dated November 13, 1934, testator directed, in paragraphs I(a) and I(b), that all of his assets be converted into cash and that the sum realized be given to trustees who should "carefully conserve my moneys in safe banking institutions". In paragraph I(c), he provided that the trustees *"are to see* that my wife, Wilhemenia Kirchner, is placed in proper surroundings in a *clean, refined German Institutional Home for Aged People,* where she will be looked after to her every desire, and where she will have the comforts of home", such institution to provide freedom of worship, and that "if feasible, I recommend the Old People's German Home, at Warrington, Bucks County, Pennsylvania, as the institution where she be entered."

He provided, in paragraph I(d), that the trustees should "make the necessary financial payments to *this* institution to provide for the maintenance" of the wife and, in paragraph I(f), directed that the wife "be provided for in *this* institution until the time of her death". Testator then provided, in paragraph I(g), that upon the wife's death "one-half of the amount remaining is to be given to *the Home* where my wife was kept in her last years, while the other one-half is to be distributed equally" among five named relatives.

At the audit of the first and final account of the executor of testator's estate, which was filed, following the death of the widow, on May 29, 1939, the Board of Trustees of the State Hospital claimed that it was entitled, under paragraph I(g) of the will, to one-half of the balance remaining in the estate. The auditing judge sustained this claim and made an award to the Hospital accordingly, to which action the other parties in interest filed exceptions. After a hearing on the exceptions, the majority of the orphans' court concluded that the Hospital was not entitled under the terms of the will, sustained the exceptions taken to the award, and directed that the whole of the fund constituting the balance of testator's estate be paid over to the five named relatives: *Umble's Estate,* 323 Pa. 170. This appeal by the Board of Trustees of the Hospital followed.

Appellant concedes that testator's use of the expression "this institution" requires that paragraphs I(d) and I(f) be construed as relating to an institution of the type particularized by him in paragraph I(c), i. e., a "clean, refined German Institutional Home for Aged People", but urges that because, in paragraph I(g), "testator made no reference to the class or type of home, in which he had directed his trustees to place his wife, as he had in the two previous provisions, but provided merely that one-half of the remaining estate should be given to 'the Home' where his wife was kept in her last

years", it should be inferred that he "intended that there would be but one condition necessary to be fulfilled in order to qualify a home to become a legatee of one-half of the amount remaining after his wife's death, and that condition was that the home should have kept her in her last years." This inference cannot be drawn. Testator's direction in the immediately preceding paragraph of the will that the widow should "be provided for in *this* institution until the time of her death," wherein he concededly referred to an institution of the type described in paragraph I(c), obviously precludes any inference that he had in contemplation, when he executed his will, the possibility that she should be "kept in her last years" in an institution of any other type. Consequently, if appellant is to share in the balance of the estate, by virtue of paragraph I(g), it must appear that it is an institution of the type prescribed by the testator.*

The evidence shows that the Norristown State Hospital is a state institution, established and maintained primarily for "the reception, care and treatment of the indigent insane" (Act of May 5, 1876, P. L. 121, Section 9); that persons are not admitted simply because they are aged, but must also be mentally underdeveloped or mentally impaired, and that persons so afflicted are admitted irrespective of age; that persons are admitted only upon being committed, voluntarily or involuntarily, and that when a patient's mental impairment has been cured, he may not be permitted to remain in the institution, but must be discharged. While it may be that despite its denomination as a "hospital" and despite the fact that it is restricted to persons with mental afflictions or deficiencies, preference being given

---

*Appellant states: "In the court below, appellant urged that, in any event, the court could invoke the *cy pres* doctrine in favor of this claim. On this appeal, the appellant has abandoned this argument because of the ruling of this Court in *White's Estate*, 340 Pa. 92."

to the indigent insane, the appellant institution might conceivably be regarded as a "home", when the term is considered in a broad sense, manifestly it cannot, with any degree of propriety, be regarded as a "refined German Institutional Home for Aged People" such as testator prescribed for his wife when he wrote his will. Nor does the circumstance that it also "performs the functions of a home for elderly persons who are mentally incompetent to care for themselves", as the auditing judge found, alter the plain fact that it is not such an institution.

It appears that when testator executed his will he was aware of his wife's mental condition, for he directed, in paragraph I(e), that the trustees should "act for my wife in every case", describing her as being "mentally unfit to take care of herself", and it is significant as bearing upon his intention that, knowing this, he nevertheless employed language which, in our opinion, clearly does not comprehend a mental institution of the type of appellant. Compare *Hope's Estate*, 253 Pa. 400. Also significant is the fact that following the commitment of his wife, nearly six months before his death, testator did not change his will in this respect. As is stated by the appellees: "If, because of the deterioration of the mental condition of his wife, he wanted the same reward to be held out to the Norristown State Hospital as he had provided for the Institutional Home of the type mentioned in his will, it is hardly likely that he would have failed to change his will to specifically so provide." Under these circumstances, and particularly in the absence of evidence that he was convinced otherwise, the only reasonable assumption is that testator never abandoned hope that his wife would improve, and intended that when she did sufficiently regain her faculties to warrant it, his provisions for her maintenance and comfort "in her last years" should be carried out. As death overtook the wife before discharge from the appellant hospital, the situation which

testator had in contemplation when he made the provision in question never arose and the intended gift, therefore, failed, as the court below very properly held.

Decree affirmed.   Costs to be paid by appellant.