## Ritter Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Michael H. Egnal,* by *Howard I. Rubin,* for exceptants.

*Louis Marion,* contra.

SHOYER, J., December 5, 1952.—Willard E. Ritter died a widower leaving his daughter, an only child, and 10 first cousins to survive him as heirs and next of kin. His will, dated February 26, 1926, was written in a verbose, stilted style and apparently by his own hand. In the fourth paragraph he required 112 words to give his daughter, Evelyn Lenore Ritter, a legacy of $500 "no more and no less as her share in my Estate." In the same identical language, the fifth paragraph gives $500 to "a maiden lady", a "friend of my mother." Each of these paragraphs provided that if the legatee should predecease testator, the money should "revert back to that part of my Estate known as the Remainder of my Estate." The remainder of his estate he willed to his mother, "her heirs and assigns forever."

In a prolix third paragraph he directed that his divorced wife should not share in his estate "in any manner whatsoever."

His mother died in 1936, leaving a will in which she gave everything to testator, and testator himself died on October 7, 1951, at the age of 73.

Six of testator's first cousins except to the adjudication by Bolger, J., declaring an intestacy as to the residue and awarding the same to the daughter as heir-at-law.

These cousins admit the general rule that "even though an heir be expressly excluded by a will, he takes, nevertheless, if an intestacy results, since his taking is not by reason of the will but, under the intestacy, by operation of law: Bruckman's Estate, 195 Pa. 363, 45 A. 1078; Gibbons' Estate, 317 Pa. 465, 468, 177 A. 50, 51; Habecker's Estate (No. 1), 43 Pa. Superior Ct. 86"; Verner Estate, 358 Pa. 280, 286.

They contend, however, that testator expressly disinherited his daughter and effectively disposed of all his property by the language of his will so that in the operation of the Intestate Act the daughter should be excluded from participation. They have cited no authority in support of their contention, and our own research discloses none.

In the first place we do not believe that the language of the will expressly disinherits the daughter. This testator, while apparently acting as his own scrivener, knew full well how to disinherit an heir, as evidenced by the language pertaining to his divorced wife:

"I do hereby direct that . . . she . . . shall have no right or title to receive and shall have no right to share in my Real Estate or Personal Property in any manner whatsoever after my decease. . . ."

Instead of utilizing similar language as to his daughter, if it was his purpose to disinherit her, he gives her

"$500 no more and no less." Then he also gives $500 to a nonrelative, a friend of his mother, using the same identical language of the preceding paragraph. Clearly the daughter was not expressly disinherited, and if we examine the testament from all four corners we can reach no such conclusion by implication.

"It is a maxim which applies here as well as in England, that an heir-at-law can only be disinherited by express devise or necessary implication; and that implication has been defined to be such a strong probability, that an intention to the contrary cannot be supposed. . . . That the daughters, who are the heirs of the testator, are disinherited by express words, is not urged; but it is argued that they are so by an implication arising from the words of the bequest; but it seems to me that the expression that they shall have $50, and no more, of his real and personal estate, does not raise such a strong probability, as has been shown, as that a contrary intention may not be supposed. Indeed, the difficulty arising from the imperfection of the will is, to ascertain what the testator did intend. His intention is at best but matter of conjecture, and certainly, on such grounds, no person heretofore has been deprived of his inheritance": Bender v. Dietrick, 7 Watts and Sergeant, 284, 287.

The phrase "no more and no less as her share in my estate" was probably a stock phrase selected out of a form book by testator, and certainly cannot be construed as specific words of disherison such as are set forth with such prolixity in the third paragraph of the will in which his former wife is definitely disinherited.

Cases relied on by exceptants to prove testator disinherited his only daughter, are Herr's Estate, 28 Pa. 467, and Estate of Annie E. McGovran, 190 Pa. 375, which are clearly not cases of intestacy, but of will construction. Exceptants by some abstruse reasoning

deem these cases controlling on the theory that here there was no intestacy, in that (1) by use of the phrase "heirs and assigns" testator made a substitutionary gift to his mother's heirs in the event she should predecease him, or, (2) that inasmuch as the language of the will contained a valid residuary clause which *would have been effective* had testator's mother only survived him, testator did dispose of his entire estate by written instrument.

The confusion raised by this last contention can be dispelled if we understand that there can be only testacy or intestacy—no middle ground to raise an anomaly such as the "posthumous entity" of Henry Wharton, that learned member of the Philadelphia bar. In writing on the matter of decedents' debts in Pennsylvania, he said:

"When a man dies, to use the plain phrase, he has either disposed of his goods by will, or he has not. He is either testate or intestate. He is in either case a dead man, and there is an end of him, and if we call him so, and discard the useless word 'decedent', we know that, as respects all we have left to deal with, . . . he must be one of the two things—a dead man with a will, or a dead man without one, not a sort of posthumous entity": 6 W. N. C. 545.

"Intestacy may result not merely from the testator's failure to make a will at all, or from his failure to dispose in his will of all of his estate, but also from his failure to make a legal and effectual disposition of either his entire estate or of a portion of it: Gray's Estate, 147 Pa. 67; Chahoon's Estate, 12 Dist. R. 229": McNulty's Estate, 29 Dist. R. 709, 710.

In Ulrich's Estate, 61 York 187, 188, testator gave $5 to his only daughter and the remainder of his estate to his sister, who predeceased him. Her issue claimed against the daughter. The court said:

"The contention of counsel for the issue of the deceased sister is that the daughter of the testator is not entitled to participate in the distribution of this estate by reason of the fact that the testator has so shown his intention in the will. This intention, counsel contends, is shown by the gift of a small pecuniary legacy to the daughter and a complete disposition of the estate by the testator. Such an implied intention on the part of the testator cannot be construed as a direction in the will such as would save the legacy under Section 15 (b) of the Wills Act. It is, however, immaterial if such an intention can be presumed in this case. The Supreme Court, in Gibbon's Estate, 317 Pa. 465, said at page 468, 'On the other hand, even where an individual heir is expressly excluded by a will, and an intestacy results, the heir may, nevertheless, take. If he takes, it is not by reason of the will, but under the intestacy created by operation of law; the heir is not excluded by exclusion in the will, as in Bruckman's Estate, 195 Pa. 363. In that case the testator said that he would not give one cent to his niece. He did not dispose of his real estate, which passed under the intestate laws. This court held that the niece took irrespective of the clause of exclusion.' "

Exceptants' remaining contention that "heirs and assigns" intended a substitutionary gift was answered by our Superior Court in Lytle Estate, 160 Pa. Superior Ct. 247, 250-51, where the court said:

"We agree with appellant that testator therefore must have contemplated that his estate might be materially reduced or even totally exhausted before his sisters, in any event, could take. His wife, and daughter and her issue, if any, were his principal concern. His sisters were to receive only what might be left in the event of his daughter's death without children and under the whole scheme of his will there is no evidence

of a testamentary intent to provide for the heirs of his sisters on the contingency of their death before his. We agree, too, that this testator demonstrated that he knew how to make a gift over, on the death of a first taker. He made two such gifts in his will. But in the provision in question, the gift to his sisters was absolute and he did not make provision for a gift over, in case of their prior deaths, because he did not contemplate their heirs as his legatees on any eventuality.

"The word heir is one of limitation and not of purchase, in the absence of a clear showing of a contrary intent. Cf. Martin v. Grinage, 289 Pa. 473, 480, 137 A. 676. The word 'and' is not the equivalent of 'or' and may not be so construed in a will except when absolutely necessary to carry out the expressed intent of the testator. Simpson's Estate, supra; Worst v. DeHaven et al., 262 Pa. 39, 104 A. 802. In the absence, aliunde, of evidence of intent to the contrary, no substitutionary gift can be inferred from the language of the devise in the phrase 'and to their heirs forever.' "

To the same effect is Witte's Estate, 102 Pa. Superior Ct. 535, 537.

Here testator revealed in the two legacies of $500 each that he knew how to make a gift over in the event of lapse. Had he desired to provide for a substitutionary gift upon the death of his mother he would undoubtedly have done so in language clear and unmistakable. The law makes it his duty to nominate his substitute expressly and clearly: Appeal of the Trustees of the University of Pennsylvania, 97 Pa. 187, 201. First blush and mature deliberation unite in convincing us that when he wrote his will he never gave his first cousins a thought.

For 15 years after the death of his mother testator did nothing to amend his will. Why he did nothing we can only conjecture.

"It will not do for the courts to undertake to guess at the intention of a testator and declare that to be his will. If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus and reconstruct the will. To do so would be a perversion of the functions of the court, and deprive a testator of the right to dispose of his property": Rouse Estate, 369 Pa. 568, 573.

Not only are we prohibited from reforming his will, but after the passage of 15 years we believe it would be an affront to his memory to attempt it for him.

The exceptions are dismissed and the adjudication is confirmed absolutely.