## Sommerville Estate (No. 2)

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Charles M. Solomon* and *Fox, Rothschild, O'Brien & Frankel*, for exceptant.

*Paul Maloney* and *Pepper, Hamilton & Scheetz*, contra.

BURKE, J., June 19, 1964.—This matter is before the court en banc on exceptions to both the adjudication and the supplemental adjudication, on the question of the construction of testatrix' will.

Margaret Sommerville died on August 28, 1958, and in her will gave only two pecuniary legacies; one to her daughter, Margaret Russell, in the amount of $2,000, coupled with an in terrorem clause, and the second to her grandson, James Russell, of $1,000. Exceptant is the said Margaret Russell who is the sole heir-at-law of testatrix.

The question here presented is addressed to the interpretation of the residuary clause, which provides:

"All the rest, residue and remainder of my estate, real, personal or mixed, I give, devise and bequeath to Mrs. Martha Elizabeth Guy, of Aldan, Delaware County, Pennsylvania, in consideration of her undertaking to offer me the protection and comfort of her home and to arrange for the necessary funeral ceremonies after my decease."

The thesis of exceptant is founded solely on the word "consideration" used in the residuary clause, as having a connotation used in the law of contracts, importing a quid pro quo which required the performance of two conditions; viz., the supplying of a room in Mrs. Guy's home for testatrix and the rendering of certain services in connection with her funeral. From such erroneous thesis exceptant readily labels the residuary gift as conditional.

In support of this fallacious premise, the exceptant cites cases which are admittedly founded on conditions precedent. They are Adams v. Johnson, 227 Pa. 454 (1910); Thompson's Estate, 304 Pa. 349 (1931); Wanamaker's Estate, 312 Pa. 362 (1933), and Stauffer's Estate, 117 Pa. Superior Ct. 386 (1935). In Adams, testator gave the residue of his estate to his wife ". . . until her death, after which, balance to . . . *providing* said . . . continues to live with said . . . until death". In Thompson, testator gave his business to three named persons, ". . . *conditioned upon* the formation of a partnership." In Wanamaker, testator *provided:* "In the event of . . . establishing a permanent course for Mercantile Business Instruction". In Stauffer, testator left his estate to his sisters-in-law ". . . *upon condition*, however that [they] continue to provide a home satisfactory to me . . . up to the date of my death". (Italics supplied.)

In all of the above cases cited by exceptant, the gifts are inseparably connected with words of established conditional meanings, and bear no similarity to the language in the instant residuary gift. In this manner, exceptant begs the question.

Adverting again to the word "consideration", exceptant would restrict its meaning to its technical definition as used in contract law, which would imply a quid pro quo for the gift. This view she supports by the fact that the will was "lawyer-drawn". In construing a will, the language should be read in the *ordinary* and grammatical sense of the words employed. The presumption is that expressions are used in their *ordinary* and normal signification, unless there is some clear indication to the contrary: Lenhart's Estate, 344 Pa. 358 (1942).

Is it not more reasonable to believe that testatrix used the expression "in consideration of" in its ordinary sense to denote her motive for the gift, and that she intended the phrase be given its plain meaning? Certainly there is no compelling reason to give the phrase a technical meaning.

According to Webster's International Dictionary, 2d ed., Unabridged, "consideration" connotes several meanings, among which is "4. That which is, or should be, considered as a ground of opinion or action; motive; reason; as, weighing several *considerations;* also, a taking into account; esp. as a reason or motive . . ."

We are interpreting a will and not a contract, and the phrase "in consideration of" has no legal or technical meaning in the law of decedents' estates. It is not to be placed in the same category as "devise", "heir", "residue", "cestui que trust", "per stirpes" and a myriad of other terms that have inelastic meanings in the law of decedents' estates.

The word "libel", for instance, may mean simply defamation of character, or the initial pleading in ad-

miralty law, or the initial pleading in a divorce action, prior to the change under the Rules of Civil Procedure. If the courts, in interpreting a will, were free to grasp a technical definition of a word, not supported by other parts of the text, then the decisions relating to the construction of wills would be in a state of utter confusion. There is no absolute and invariable compulsion to give a word, whose sole meaning is technical in the law of wills, its technical meaning. In Barnard Estate, 351 Pa. 313 (1945), testator provided: ". . . All the remaining half of my said estate, or all or any portion of the other half not so disposed of by will by my said beloved wife, to be divided among the *heirs* of myself, according to the intestate laws of the Commonwealth of Pennsylvania." (Italics supplied). The court said, at page 315:

"The late Judge McDonough, the learned auditing judge, ruled that the language of the will clearly indicated that testator had not employed the word 'heir' in its strict technical sense. With this ruling we agree."

The language of the will clearly expresses why testatrix gave the residue of her estate to Mrs. Guy. It is a lucid expression of her gratitude for Mrs. Guy's kindness in *offering* testatrix the protection and comfort of her home and *offering* to arrange the necessary funeral ceremonies and no more. Since she was favoring Mrs. Guy over exceptant, it was quite appropriate for testatrix to state her reason.

Motives which prompt testators to bestow gifts are as varied as the gifts bestowed and are frequently found in wills. In 5 Bowe-Parker: Page on Wills §44.6, we find:

"The devise may refer to a service to be rendered, and yet not be conditioned upon the rendition of such service. A recital in a will that the legacy given is *in consideration of* the legatee's attention to testator or testatrix, and spouse, or *in consideration of* being

taken care of and well treated by devisee during remainder of testator's life, or in token of faithful services or an expression of gratitude toward a legatee for his services to be rendered as executor, or *in consideration of* the services to be rendered in the probate of the testator's will *was held to be an expression of the motive of testator in making the gift, and not a condition upon which he made it.*" (Italics supplied.)

The phrase "in consideration of" as used by testatrix is further removed from any connotation of condition than the above-mentioned testamentary recitals which were held to be *unconditional.* See Cooper v. Diamond, 1 D. & C. 2d 593, affirmed 382 Pa. 30, sub. nom. Cooper v. Milikovsky.

Exceptant contends that the absence of a gift over is indicative of a conditional gift. On the contrary, the converse is true: Brumbach Estate, 373 Pa. 302 (1953).

An absolute estate will not be cut down by subsequent language unless testator has expressed a clear and unambiguous intention to do so: Harris Estate, 351 Pa. 368 (1945); Burpee Estate, 367 Pa. 329 (1951).

We may not reform a will under the guise of construction in order to reach a supposed contrary intent to support a legal conclusion. "It becomes no man and no court to be wise above that which is written": Doebler's Appeal, 64 Pa. 9 (1870). Words may not be read into a will unless it is certain beyond a reasonable doubt that testator has not expressed himself as he intended and supposed he had done: McConnell's Estate, 266 Pa. 294 (1920). Interpretation is never to assume the proportions of reformation.

Certainly testatrix's attorney knew that the absence of a gift over would indicate a vested legacy, especially if an intestacy were to result. Where an intestacy

would result were the gift held to be contingent, it is a consequence which the law always seeks to avert: McCauley's Estate, 257 Pa. 377 (1917). Is it likely that testatrix intended that her estate should pass to the same person to whom she bequeathed but a $2,000 legacy in terrorem?

Where a testator recites that it is his intention to dispose of all his estate, a construction should be adopted that would avoid an intestacy, unless it does violence to the language of the will: Grier Estate, 403 Pa. 517 (1961). Whatever conjecture might be indulged in as to the provision testatrix might have made upon failure of the supposed condition, had she desired to provide for it, it is not within the province of the court to insert into her will a substantive disposition which she herself, whether by design or inadvertence, failed to make. See Verner Estate, 358 Pa. 280 (1948).

At a hearing before the learned auditing judge on May 9, 1962, in connection with the supplemental account, exceptant raised the question of the conditional character of the residuary gift.

Mrs. Guy testified at the d. v. n. hearing that she offered testatrix a room in her house. She died prior to the audit of the account and the hearing on the construction of the will. At the audit, the transcript of her testimony was offered in evidence, to which the exceptant objected on the ground that her testimony was incompetent because given at a prior hearing, d. v. n. proceeding, when the construction of the will was not in issue, relying on the Act of May 23, 1887, P. L. 158, sec. 9, 28 PS §327.

Some doubt has arisen as to the admissibility in this proceeding of the testimony of Mrs. Guy. However, since this testimony, if accepted, would be merely corroborative of the testimony of Mrs. Guy's daughter, Louise Guy, on the same point, we take no notice of Mrs. Guy's testimony.

Louise Guy testified at the audit on the subject of the interpretation of the will. She said that testatrix came to her mother's home, shortly after her family had moved to Aldan in 1943. She was present during conversations between her mother and testatrix and, following testatrix' examination of a bedroom in their home, the following colloquy occurred:

Mrs. Sommerville: "This is where I would like to live when I give" (retire)

Mrs. Guy: "Now Mrs. Sommerville, we have the room for you and you have spoken many times before about coming to live with us, and the invitation still stands. Now you have your choice of a room."

Testatrix never availed herself of the accommodations in Mrs. Guy's home.

The quoted testimony abundantly establishes that Mrs. Guy, having made the offer as late as "shortly after 1943", and testatrix' will having been executed on October 22, 1945, the words in the will, "I give . . . to Mrs. Martha Elizabeth Guy . . . in consideration of her undertaking to offer me the protection and comfort of her home . . .", were founded on a past offer made by Mrs. Guy. Her testimony, however, was not offered to show compliance with any condition, but merely to develop the circumstances surrounding testatrix in the execution of her will and to corroborate the motive for the gift as clearly stated by testatrix herself. It has been long well settled, and indeed it is a principle so consonant with reason that the only wonder is that it should ever have been questioned, that all the surrounding circumstances of testator, his family, the amount and character of his property, may and ought to be taken into consideration in giving a construction to the provisions of the will: Postlethwaite's Appeal, 68 Pa. 477 (1871). You may place yourself, so to speak, in testator's armchair and consider the circumstances by which he was surrounded when he made his will,

to assist you in arriving at his intention: Dinkey Estate, 403 Pa. 179 (1961); Vandergrift Estate, 406 Pa. 14 (1962).

To rewrite testatrix's will in favor of her daughter deprives decedent of a valued legal right. A parent is under no legal duty or obligation to leave a child any part of his estate: McCready Trust, 387 Pa. 107 (1956). No right of a citizen is more valued than the power to dispose of his property by will. His last and final direction should not be struck down except for the clearest reason: Farmer Will, 385 Pa. 486 (1956). In Johnson Will, 370 Pa. 125 (1952), Mr. Chief Justice Bell, upholding the legal right of a testator to dispose of his property as he sees fit, said:

"It is natural that children should want and expect to inherit their parents' property and will be greatly disappointed if the parent leaves a substantial part of his estate to others. But it is and always has been the law of Pennsylvania that every individual may leave his property by will to any person, or to any charity, or for any lawful purpose he desires unless he lacked mental capacity, or the will was obtained by forgery or fraud or undue influence, or was the product of a so-called insane delusion. While it is difficult for many people to understand how or why a man is permitted to make a strange or unusual or an eccentric bequest, especially if he has children or close relatives living, we must remember that under the law of Pennsylvania ' "a man's prejudices are a part of his liberty. He has a right to the control of his property while living and may bestow it as he sees fit" at his death: McCown v. Fraser, 327 Pa. 561 . . .; Cauffman v. Long, 82 Pa. 72.' "

In this very estate, when, on appeal to the Supreme Court, Mr. Chief Justice Bell, having found that testatrix did not lack mental capacity and was not suffering from a so-called insane delusion, reiterated, "Our

Courts have always held that a man's feelings, his likings, loves, prejudices and hatreds are a part of his liberty and (subject to a number of important but presently irrelevant exceptions) that he can use his property in his lifetime and bequeath it at his death in accordance with his wishes, whims or prejudices": Sommerville Will, 406 Pa. 207.

For the reasons herein stated the exceptions to the adjudication and the supplemental adjudication of the learned auditing judge are dismissed.

## Dissenting Opinion

LEFEVER, J., June 19, 1964.—This is one of the most vexing and controversial cases which has been before this court in the past 13 years.[1] I cannot bring myself to agree with the conclusion finally reached by the majority that the last 26 words of the 54-word residuary clause of testatrix' one-page will should be interpreted to be meaningless or unnecessary surplusage, so as to give the bulk of her estate to the children of a deceased stranger to her blood rather than to her only child and next of kin under the intestate law.[2]

It is well settled that a will must be so interpreted as to give meaning to all of the words used therein if any reasonable, logical connotation can be attributed to them: Calder's Estate, 343 Pa. 30, 37. Moreover, an

---

[1] After hearing argument and reargument on exceptions to the original adjudication of the learned auditing judge, this court sent the case back to him for further consideration. Exceptions were filed to his supplemental adjudication. Subsequent to argument on these exceptions, the court ordered reargument and propounded specific written questions to counsel for argument.

[2] It is conceded by everyone that Mrs. Guy's estate would be entitled to the residuary estate if a period had been substituted for the comma at the end of the clause "All the rest, residue and remainder of my estate, real, personal or mixed, I give, devise and bequeath to Mrs. Elizabeth Guy of Alden, Delaware County, Pennsylvania, . . ." and the remaining 26 words had been deleted.

heir is not to be disinherited except by clear and precise words which accomplish this. Furthermore, where words of technical legal meaning are used, testatrix is presumed to intend that meaning, especially where her will is drawn by a trained scrivener.

In the light of these precepts, what was the legal meaning of the last 26 words of testatrix' residuary clause, "in consideration of her undertaking to offer me the protection and comfort of her home and to arrange for the necessary funeral ceremonies after my decease?"

"In consideration of" is a phrase of legal art with a long history and a well-established meaning in the law of contracts. "In consideration of" is the standard phraseology used in the consideration clause of most contract forms and in the majority of agreements drawn by lawyers. " 'In consideration of' denotes that which supports or gave validity to contract or that which supports meeting of minds . . .": 20A Words and Phrases 339. "Consideration" is defined in 1 Bouvier's Law Dictionary, Rawles 3rd revision, 612, as "An act or forbearance, or the promise thereof, which is offered by one party to an agreement, and accepted by the other as an inducement to that other's act or promise"; and also as "the *quid pro quo* that the party to whom the promise is made does or agrees to do in exchange for the contract." In short, "consideration" in law means "compensation for". The discussion of the various legal meanings of "consideration" fills pages 236 to 324 of volume 8A of Words and Phrases. Professor Williston, in volume 1 of his monumental work on Contracts, 3rd ed., devotes pages 366 to 595 to the subject "consideration". At page 385, he defines "consideration" as "Detriment to the promisee or benefit to the promisor". Moreover, there are extensive chapters on "consideration" in every text book, case book and digest on the law of contracts.

"Undertaking" also is a word of legal art. "Undertaking" is "An engagement by one of the parties to a contract to the other, and not the mutual engagement of the parties to each other: a promise": 3 Bouvier, supra 3352. The word "offer" also has a specific legal meaning in the law of contracts.

Testatrix' will was drawn by Henry J. Rebman, Esq., a respected and skilled Philadelphia lawyer. It is unrealistic, if not absurd, to suggest that such a lawyer would use these common words of legal art in such a short will with anything but deliberate purpose to connote their accepted legal meaning and thereby to express what he understood to be the intention of testatrix. I submit that we should turn to the above-mentioned legal authorities to ascertain the meaning of the phrase "in consideration of" and the words "undertaking" and "offer" rather than look for their lay meaning in a general dictionary. The majority cites Page on Wills for a special meaning of the phrase "in consideration of" in the law of wills, but no Pennsylvania cases supporting this view are noted.

The tense chosen in the controversial clause is significant. "Her undertaking to offer" is in the present tense, i.e., a present agreement to provide testatrix with a home at that time or in the future. If testatrix intended to say in 1945, when she executed her will, that her gift to Mrs. Guy was given "because of the offer made by Mrs. Guy in 1943," proper grammar and correct semantics required the use of an expression such as "in appreciation of her *having undertaken* to offer me", i.e., the past tense. Use of the present tense indicates that testatrix was looking for future performance and not a past offer by Mrs. Guy.

It is my opinion that testatrix' intention and the meaning of her words was to give a substantial gift to Mrs. Guy "in consideration of" her making an offer which testatrix expected to be fulfilled. The fulfillment,

not the offer, was important. Testatrix' all-consuming desire was to reward a friend who would provide her with a home in her advanced and declining years and arrange for her to have a decent burial. Hence, the recital of "consideration", in effect, imposed a condition precedent upon the gift. Mrs. Guy's duty was to fulfill "her undertaking" by furnishing a home to decedent and by arranging for her funeral. This was the legal consideration for the residuary gift. It was not an expression of appreciation for speaking a few words *in the lay sense* of the word "consideration". Nor was it merely an explanation of the "reason" or "motive" for the gift, or the equivalent of "because of" or "in recognition of", as urged by Mrs. Guy's executor.

That this was decedent's intention is made more clear by her deliberate omission of any gift over in the event that Mrs. Guy predeceased her. Decedent thereby wrote into her will the intestate laws in the event that the contingency occurred. Accordingly, if that event had occurred, the recipient would have been exceptant and not Mrs. Guy's children. Therefore, it follows that it was decedent's intention that for Mrs. Guy to be eligible to receive decedent's beneficence, it was necessary for her (1) to survive decedent and (2) to provide the specified consideration.

In Adams v. Johnson, 227 Pa. 454, testator gave his residuary estate to his wife, Mary Ann Arthur, "until her death, after which, balance to Anna Bell Adams . . . providing said Anna Bell Adams continue to live with said Mary Ann Arthur until death". The court stated, at page 457:

"The testator and his wife were aged people, and resided on a small farm, encumbered for more than half its value. He had no blood relatives, and she had none residing in that community. Naturally, William Arthur desired to provide for his widow for the years that she might live after his death, and he thought he

could best do so by permitting her to remain on the little farm with a companion. It was under these circumstances that he devised to her the farm for life, and gave the remainder to Anna Bell Adams, who was then a member of the family. If he had intended to give an *absolute estate in remainder to the girl he could have done so by omitting the proviso in* the devise." (Italics supplied.)

Accord: Thompson's Estate, 304 Pa. 349; Stauffer's Estate, 117 Pa. Superior Ct. 386; Kirchner's Estate, 342 Pa. 241; In re Marteney's Estate, 163 Kan. 379, 183 P. 2d 210; Brennan v. Brennan, 185 Mass. 560, 71 N. E. 80. See Watters v. Bredin, 70 Pa. 235.

In the cited cases, testator prescribed certain things to be done by the legatee. Failure to perform them was held to cause the gift in the will to fail. Similarly, the controversial words in the instant will specified the consideration for which, or condition upon which, Mrs. Guy would take the residue, namely, her providing a home for decedent and arranging her funeral, and her failure to perform defeated the gift.

The majority, in effect, concedes that Mrs. Guy's testimony in the will contest was not admissible in this controversy, but holds that Louise Guy's testimony was admissible. I have doubt as to its admissibility under the so-called Dead Man's Act of May 23, 1887, P. L. 158. See Pavlinko Estate, 399 Pa. 536, 544; Ziska v. Lerch, 155 Pa. Superior Ct. 481, 483. If it was admissible, it proves only that Mrs. Guy in 1943 invited decedent to come "to live with us . . . you have your choice of a room". It is clear that testatrix never lived in Mrs. Guy's home [3] and that Mrs. Guy only in small measure participated in making decedent's funeral arrangements.

"Where such conditions have been imposed by will

---

[3] In fact, testatrix spent the last eight or nine years of her life in a nursing home.

there can be no valid and effectual gift until they have been satisfied. It is well settled by our decisions that conditions precedent must be strictly performed": Whitman's Estate, 329 Pa. 377, 380.

This court specifically requested counsel at the re-argument "to furnish the court with citations of cases in which an aged testator made a substantial gift by will to a stranger for care in his old age, and no such care was provided". Significantly, counsel for Mrs. Guy's executor failed to cite any such cases. It must be assumed, therefore, that there are none. It is note-worthy that in the cases cited by exceptant, the court held that the gift failed.

The majority opinion inquires, page 5: "Is it likely that testatrix intended that her estate should pass to the same person to whom she bequeathed but a $2,000 legacy in terrorem?" Mr. Justice, later Chief Justice, Stern answered this question cogently in the affirma-tive in Verner Estate, 358 Pa. 280, 286:

"Appellants, pointing out that testatrix deliberately cut her brother Harry off with a nominal gift of $5, argue that she could scarcely have intended that he or his children should now obtain a comparatively large portion of her estate. This contention, however, is without merit because, even though an heir be ex-pressly excluded by a will, he takes, nevertheless, if an intestacy results, since his taking is not by reason of the will but, under the intestacy, by operation of law: Bruckman's Estate, 195 Pa. 363, 45 A. 1078; Gibbons's Estate, 317 Pa. 465, 468, 177 A. 50, 51; Habecker's Estate (No. 1), 43 Pa. Superior Ct. 86."

It is, therefore, my opinion (1) that the disputed words in the residuary clause required Mrs. Guy to provide a home for decedent and make funeral ar-rangements for her to qualify to receive the residue; (2) that Mrs. Guy, having failed to do this, was not entitled to the residue; and (3) that there is an in-

testacy with respect to the residue and exceptant is the person entitled thereto under the Intestate Act.

Hence, I dissent.